**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 1 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.                                                No. 99-2200

SANDRA CHAVEZ,

  Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-98-240-BB)**

---

Fred J. Federici (Robert J. Gorence, Acting United States Attorney, with him on the brief), Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Stephen C.M. Long (Ron Koch on the briefs), Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **BRORBY, ANDERSON** and **HENRY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Sandra Chavez appeals her conviction of conspiracy to distribute a

controlled substance (less than fifty kilograms of marijuana – a Schedule I

controlled substance – 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)) and aiding and abetting, contrary to 21 U.S.C. § 846 and 18 U.S.C. § 2. Ms. Chavez also appeals her sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

The United States Border Patrol stopped Lorenzo Maldonado at a checkpoint about twenty-five miles from the United States border with Mexico. After questioning Mr. Maldonado and observing his action and the unusual appearance of his truck, the agent on duty became suspicious Mr. Maldonado was transporting drugs in his truck, and asked Mr. Maldonado for his permission to allow a drug-sniffing dog to check the truck. Mr. Maldonado agreed, and the dog alerted to the gas tank. Mr. Maldonado admitted the truck contained marijuana and expressed a desire to cooperate with the authorities by delivering the truck to its destination. The agent called United States Customs Service Special Agent Dan Lane, who arrived shortly thereafter.

Mr. Maldonado told Special Agent Lane "he had been hired by somebody down in Juarez to transport [the] pickup truck containing marijuana to Albuquerque, where he was supposed to arrange for delivery to somebody there." Mr. Maldonado referred to the person who hired him as "Alonso." According to

Special Agent Lane, Mr. Maldonado stated "he was to be paid $1,000. He was given a slip of paper with instructions as to what to say when he called the person, who would be a woman, at a telephone number which was written on th[e] scrap of paper." Mr. Maldonado told Special Agent Lane "his instructions were to call the telephone number ... at the top of the [scrap of paper], 505-239-6648, and to tell the woman who answered that he was de parte de Alonso, on behalf of Alonso." Mr. Maldonado explained he did not know the people Alonso instructed him to call. Whoever answered the telephone "was supposed to pay him his $1,000 for transporting the marijuana."

After discussing the planned transaction with Mr. Maldonado, Special Agent Lane spent a couple of hours obtaining the authorization and the equipment needed to execute the controlled delivery. Special Agent Lane then started the drive to Albuquerque with Mr. Maldonado as his passenger in the pickup truck Mr. Maldonado originally drove. Other agents accompanied them to Albuquerque in their vehicles. They arrived in Albuquerque at about 12:30 at night and Mr. Maldonado agreed to make a monitored call to the telephone number on the scrap paper. After discussing what Mr. Maldonado should tell the person who answered

the phone, Special Agent Lane dialed the number at about 1:10 a.m.[1]

At trial, Ms. Chavez admitted she answered the phone and spoke to Mr. Maldonado. The conversation took place in Spanish, but was translated into English, transcribed and admitted into evidence at the trial. According to the transcript of the conversation, Mr. Maldonado first explained he was at a Taco Cabana restaurant and asked Ms. Chavez if she knew where it was located. Ms. Chavez responded she did. Mr. Maldonado then stated, "I'm here ... I got here a little late because ... the gasoline ... I was very low on gasoline." Ms. Chavez responded, "Listen ... I was going to [ask] if you could bring it all the way over here." Mr. Maldonado replied he ran out of gasoline and "need[ed] a can for the gasoline." After confirming Mr. Maldonado was at the restaurant, Ms. Chavez responded, "Well ... then we'll leave right now." Mr. Maldonado then reminded Ms. Chavez not to forget "the money that I'm going to take to Alonso." Ms. Chavez responded, "OK." Mr. Maldonado then reminded her to bring the money she was to pay him as well. Ms. Chavez responded affirmatively, and told Mr.

---

[1] Beside the fact Ms. Chavez answered the number called, evidence presented at trial showed the telephone number corresponded with the cell phone Ms. Chavez had with her the night of her arrest. Evidence also established the same cell phone was used to call the dealership where the truck transporting the marijuana was purchased, one day before its purchase. Moreover, her address book contained the name "Alonso" and his telephone number, which matched the other telephone number written on Mr. Maldonado's scrap of paper.

Maldonado she would meet him in "[a]bout half an hour". The conversation terminated at that point.

A few minutes later, Special Agent Lane placed another call to Ms. Chavez because Mr. Maldonado failed to determine who would be coming and what type of vehicle they would be driving. Special Agent Lane felt this information was critical to arranging the controlled delivery. In the second recorded conversation, Mr. Maldonado described himself as having a thick mustache. He also asked Ms. Chavez who was "going to come to pick up the truck." Ms. Chavez said she would come in a blue Blazer with her mother-in-law, Ms. Dominguez. Mr. Maldonado reminded her not to forget the gasoline can.

Ms. Chavez and Ms. Dominguez subsequently arrived at the restaurant parking lot, and Ms. Chavez briefly spoke with Mr. Maldonado. Their taped conversation revealed further incriminating statements by Ms. Chavez.[2] The

---

[2] For instance, Ms. Chavez inquired whether anyone followed Mr. Maldonado. When Mr. Maldonado asked if she brought the money, she said yes, but she wanted him to drive the truck to the house. Ms. Chavez then told Mr. Maldonado she would pay him "there." At trial, Ms. Chavez claimed the taped conversation involved Ms. Dominguez, not her. However, based on Special Agent Lane's and an expert interpreter's testimony identifying Ms. Chavez as the predominant female voice on the tape, the jury rejected Ms. Chavez's assertions.

agents then arrested Ms. Chavez

At trial, Special Agent Lane testified, without objection, regarding Mr. Maldonado's post-arrest out-of-court statements. Mr. Maldonado did not testify at trial. The trial court allowed the government to enter into evidence the scrap of paper bearing Mr. Maldonado's Albuquerque contact's phone number. Ms. Chavez's attorney objected to the introduction of the piece of paper on the grounds of hearsay, but the district court overruled her objection, concluding it was not offered for the truth of the matters asserted, but to provide a link between the conspirators.

Ms. Chavez testified at trial she did not know with whom she was speaking when Mr. Maldonado called her. Ms. Chavez claimed she was not expecting anyone to call and had no prior knowledge of the purpose of the call. Ms. Chavez claimed she rushed to the Taco Cabana in her pajamas in the middle of the night to take gasoline to the caller as a favor. She assumed the caller was referring to her friend Alonso, even though Alonso is a common name. She never tried to verify that the Alonso the caller mentioned was in fact her friend Alonso. Ms. Chavez testified she took Ms. Dominguez with her to the Taco Cabana in order to see if she could recognize the caller. Ms. Chavez denied she intended to pick up

the truck.  She also testified she thought Mr. Maldonado's admonitions to her to not forget the money regarded the money for the gasoline.  When they arrived at the Taco Cabana, Ms. Chavez claimed she never spoke to Mr. Maldonado, and instead, Ms. Dominguez spoke with Mr. Maldonado and made the incriminating taped remarks.  She also denied knowing the truck contained marijuana.

The jury convicted Ms. Chavez.  Following the probation officer's recommendation in the presentence report, the district court increased Ms. Chavez's sentence two levels for obstruction of justice concluding she committed perjury.  The district court refused Ms. Chavez's request to reduce her sentence two levels, concluding she failed to show she acted as a minor participant in the transaction.  The district court sentenced Ms. Chavez to 41 months imprisonment.

## II.  DISCUSSION

### A.  Hearsay Statements

Ms. Chavez contends the trial court admitted hearsay statements in violation of her Sixth Amendment right to confrontation by allowing Special Agent Lane to testify concerning Mr. Maldonado's out-of-court statements, and by admitting the piece of paper bearing the phone number of Mr. Maldonado's contact.  In general, we review the admission of evidence at trial for abuse of

discretion.[3]  *United States v. McHorse*, 179 F.3d 889, 901 (10th Cir.), *cert.*

*denied*, 120 S. Ct. 358 (1999).  "Because hearsay determinations are particularly

fact and case specific," our review of those decisions is especially deferential.

*United States v. Trujillo*, 136 F.3d 1388, 1395 (10th Cir.), *cert. denied*, 525 U.S.

833 (1998).[4]  Even if the admission of a hearsay statement violated the rules of

evidence, it does not violate the Sixth Amendment Confrontation Clause "'if it

bears adequate indicia of reliability.'"  *Paxton v. Ward*, 199 F.3d 1197, 1207

(10th Cir. 1999) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)).  Whether

hearsay statements are reliable is a mixed question of law and fact which we

review *de novo*.  *United States v. Gomez*, 191 F.3d 1214, 1222 (10th Cir. 1999).


1.  Special Agent Lane's Testimony

Ms. Chavez contends the court erred by allowing Special Agent Lane to

---

[3]  As discussed later, Ms. Chavez did not object to Special Agent Lane's testimony at trial, resulting in a plain-error review.

[4]  According to Federal Rule of Evidence 802, "[h]earsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802.  Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."  Fed. R. Evid. 805.

testify as to Mr. Maldonado's statements, particularly that: 1) a man named Alonso in Juarez hired Mr. Maldonado to deliver the marijuana to people in Albuquerque who Mr. Maldonado did not know, and who were to pay him $1,000 on delivery; and 2) Alonso instructed Mr. Maldonado to dial a number written on a slip of paper and to tell the woman who answered he was calling "de parte de Alonso," or "on Alonso's behalf." Ms. Chavez contends this evidence constituted hearsay within hearsay, and, even though her counsel failed to object at trial to the out-of-court statements, we should determine the trial court committed plain error when it allowed the testimony.

Because Ms. Chavez did not object to Special Agent Lane's testimony at trial, we review the admission of this evidence for plain error to determine whether it violated Ms. Chavez's Sixth Amendment right to confrontation. *See United States v. Cass*, 127 F.3d 1218, 1225 (10th Cir. 1997) (holding that absent an objection asserting the hearsay evidence violated the defendant's Constitutional rights under the Confrontation Clause, our review is for plain error only), *cert. denied*, 522 U.S. 1138 (1998); *see also United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc) ("[W]here a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail

to raise the constitutional issue sua sponte."); *United States v. Roberts*, 583 F.2d 1173, 1175 (10th Cir. 1978) ("Ordinarily, a confrontation clause objection cannot be raised on appeal unless it was also raised sometime during the trial court proceedings."), *cert. denied*, 439 U.S. 1080 (1979).  In order to constitute plain error under the Sixth Amendment Confrontation Clause, the district court's error must be obvious and substantial, affecting the fairness and integrity of the judicial proceeding, and we must conclude the "error had an unfair prejudicial impact on the jury's deliberations."  *Perez*, 989 F.2d at 1583 (quotation marks and citation omitted); *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir. 1991). "Although the rigidity of the plain-error rule is relaxed somewhat when a potential constitutional error is involved, the defendant bears the burden of demonstrating that he was prejudiced by the error before this court can grant him relief."  *United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir.) (citation omitted), *cert. denied*, 522 U.S. 845 (1997).

Having determined the plain-error standard applies, we proceed to Mr. Chavez's specific contentions concerning Special Agent Lane's testimony.  First, Ms. Chavez contends the district court committed plain error, violating her right to confrontation under the Sixth Amendment, by allowing Special Agent Lane to testify regarding Mr. Maldonado's out-of-court statements without first

determining their reliability in accordance with Fed. R. of Evid. 801(d)(2)(E).

This Rule requires the trial court to make findings regarding the alleged existence

of, and the co-conspirator's participation in, the drug conspiracy, and that the

statements were made in the course and furtherance of that conspiracy, before the

statements can be admitted.[5] Ms. Chavez asserts Special Agent Lane's testimony

on the "pieces of paper" and Mr. Maldonado's statements do not meet the

requirements of Rule 801(d)(2)(E) and are consequently inadmissible hearsay.

She also contends Mr. Maldonado's statements do not fall within the exception to

the hearsay rule for statements against penal interest, because he made them in the

course of a custodial interrogation and they contain Alonso's hearsay statements.

She further argues the district court violated the Confrontation Clause by the

admitting these statements because the reliability of Mr. Maldonado's out-of-

---

[5] Fed. R. Evid. 801(d)(2)(E) provides an exception to the general rule against the admission of hearsay in a trial. Under Rule 801(d)(2)(E),

> a statement is not hearsay if it is made by "a coconspirator of a party during the course and in furtherance of the conspiracy." Thus, under Rule 801(d)(2)(E), statements of a defendant's alleged conspirators may not be admitted over objection unless the trial court finds the following elements by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy.

*United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997).

court statements is questionable. She asserts Mr. Maldonado's statements were unreliable because he made them during a custodial interrogation, after agents promised him leniency and while he was highly agitated. Ms. Chavez contends the admission of these statements constitutes plain error that was not harmless because without these statements being brought to the attention of the jury, insufficient evidence existed for her conviction.

In reply, the government asserts if the district court erred in admitting Mr. Maldonado's post-arrest statements, Ms. Chavez invited any error and/or waived any claim with respect to Mr. Maldonado's post-arrest statements. Specifically, it claims Ms. Chavez opened the door to admission of this evidence by referring to Mr. Maldonado's out-of-court statements during her opening statement and when cross-examining Special Agent Lane. The government further argues it introduced this evidence for the non-hearsay purpose of providing background to the investigation.

Before addressing Ms. Chavez's hearsay arguments, we must determine if she invited the error of which she complains. If so, we need proceed no further, as "[it] is fundamental that a defendant cannot complain of error which he invited upon himself." *United States v. Cutler*, 948 F.2d 691, 697 (10th Cir. 1991)

(quotation marks and citation omitted); *see also United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991), *cert. denied*, 503 U.S. 997 (1992); *Aves v. Shah*, 997 F.2d 762, 766 (10th Cir. 1993). It is widely recognized that a party who raises a subject in an opening statement "opens the door" to admission of evidence on that same subject by the opposing party. *See, e.g., United States v. Croft*, 124 F.3d 1109, 1120 (9th Cir. 1997) (holding the defendant "opened the door" to bolstering testimony of a prosecution witness by branding that witness a liar in opening statement); *United States v. Moore*, 98 F.3d 347, 350 (8th Cir. 1996) (holding defendant's opening statement opened the door to Fed. R. Crim. P. 404(b) evidence); *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir. 1995) (holding counsel "opened the door" for prosecution to introduce on direct examination plea agreements of witnesses with statements requiring truthful testimony where defense counsel attacked credibility of government witness in opening statement), *cert. denied*, 517 U.S. 1149 (1996); *United States v. Segal*, 852 F.2d 1152, 1155 (9th Cir. 1988) (holding it was not improper for government to "step[] through the 'open door'" on direct examination of witness when defendant's attorney brought up defendant's cocaine use during defendant's opening statement).

Because Ms. Chavez invited the error of which she complains, we conclude

Ms. Chavez has not shown the district court committed plain error in allowing Special Agent Lane to testify concerning Mr. Maldonado's out-of-court statements. Specifically, Ms. Chavez's attorney referred to the exact content of those statements in his opening statement,[6] and before Special Agent Lane testified, attempted to elicit details from Agent Alvarado on cross-examination concerning Mr. Maldonado's statements. Consistent with the use of these statements, Ms. Chavez's counsel later elicited more details from Special Agent Lane, in an attempt to highlight discrepancies between his testimony and the instructions given by "Alonso."[7] Therefore, the district court did not commit

---

[6] The government points out Ms. Chavez's attorney first revealed the contents of Mr. Maldonado's post-arrest statements to the jury. In his opening statement, Ms. Chavez's attorney stated the government would produce a coached witness who would testify Mr. Maldonado told the witness: "[H]e was to receive $1,000 for taking this marijuana. [He] [h]ad been told that he was supposed to pick up some unknown amount of money also, a person that had met this Alonso through Ester, a family friend, who was the sister of Alonso." Ms. Chavez's attorney further stated:

> You're going to hear in this conversation, in this taped conversation, there is no mention of any amount of money. Maldonado doesn't say to Ms. Chavez, ["]Don't forget you owe me $1,000.["] That's what he told the agents that he was supposed to be paid and that the recipients would pay this to him. There's no mention of that on [the] tape.

In addition, Ms. Chavez's attorney informed the jury "this person named Alonso ... supposedly gave the marijuana to Maldonado."

[7] Ms. Chavez's counsel first sought to refresh Agent Alvarado's memory about what Mr. Maldonado said concerning where he obtained the marijuana.

plain error by allowing the government to use Mr. Maldonado's out-of-court statements on direct examination of Special Agent Lane. Because we have concluded Ms. Chavez "opened the door" to the testimony of which she complains, we need not address her argument concerning Rule 801(d)(2)(E) and the reliability of this evidence.

2. The Piece of Paper

Prior to the trial, Ms. Chavez raised the issue of the hearsay nature of the scrap of paper bearing the phone number of Mr. Maldonado's contact in Albuquerque and the phrase "de parte de Alonso." The court decided to reserve ruling on the matter until the evidence was offered at trial. When the government entered the piece of paper into evidence, Ms. Chavez's attorney objected on the grounds it constituted inadmissible hearsay. The court, however, overruled this

---

However, Agent Alvarado could not remember any details. Ms. Chavez's attorney then cross-examined Special Agent Lane, and repeatedly referred to Mr. Maldonado's out-of-court statements, eliciting even more details concerning those statements than the government introduced during its direct examination. In closing, Ms. Chavez's attorney argued the agents had conducted a shoddy investigation, referring to Mr. Maldonado as a "mule." It is clear from the record the theory of the defense centered on the notion the agents too quick believed Mr. Maldonado's out-of-court statements, failed to investigate them sufficiently, and too eagerly arrested Ms. Chavez based on those statements. It would have been impossible to mount such a defense without reference to Mr. Maldonado's out-of-court statements. This explains trial counsel's failure to object to these statements and attempts to elicit further details concerning them.

objection determining the evidence was introduced for the non-hearsay purpose of linking the co-conspirators. Because Ms. Chavez entered a contemporaneous objection, we review the court's decision to allow the piece of paper into evidence for abuse of discretion. *See McHorse*, 179 F.3d at 901.

The government submits it offered the scrap of paper for the non-hearsay purpose of linking the conspirators. Ms. Chavez counters the government's argument by asserting the government offered the piece of paper not merely to link the co-conspirators, but "to show that the person who answered the cell phone was 'Alonso's' co-conspirator." In addition, Ms. Chavez asserts the piece of paper "was offered to show that 'de parte de Alonso' was a code word which had been given to Maldonado by 'Alonso' and would be recognized by the proper recipient." In short, she argues all the disputed out-of-court statements in this case "are crucial for the truth that Ms. Chavez was involved in the drug transaction."

We are not convinced by Ms. Chavez's arguments. The phone number on the scrap of paper was clearly used to link Ms. Chavez to Mr. Maldonado and

Alonso.[8]  No "truth" can be gleaned from a mere phone number and thus, the number could not have been submitted for the truth of the matter asserted.  In addition, the phrase "de parte de Alonso" is likewise too vague to be considered for the "truth" of the statement "on behalf of Alonso."  Ms. Chavez unsuccessfully tries to cast the disputed phrase as being offered for the "truth" of the ultimate issue in this case – Ms. Chavez's guilt.  However, that phrase, by itself, proves nothing.[9]  Its only utility is to form a link between Ms. Chavez and her co-conspirators.  Thus, despite the fact Special Agent Lane's testimony indicated Ms. Chavez was Alonso's contact and expecting a call at the number written on the piece of paper, it does not necessarily follow the piece of paper was offered for the "truth" of the matter asserted, *i.e.*, that Ms. Chavez was Alonso's co-conspirator or the phrase "de parte de Alonso" was a code word recognizable by the proper recipient.  We therefore conclude the district court did not err by admitting the piece of paper for the non-hearsay purpose of linking the conspirators.

---

[8]  The government points out the importance of linking Ms. Chavez to Alonso is emphasized by her counsel's closing argument purporting nothing linked her to him or the conspiracy.

[9]  In her brief, Ms. Chavez admits the piece of paper at issue possesses "no inherent meaning."

Moreover, even if the district court erred in admitting the piece of paper, we conclude the error was harmless. Although Ms. Chavez claims a constitutional violation in her briefs, at trial her only objection to the admission of the piece of paper was on the grounds of hearsay. The Sixth Amendment is not automatically violated simply because the hearsay rule is violated. *United States v. McIntyre*, 997 F.2d 687, 705 (10th Cir. 1993), *cert. denied*, 510 U.S. 1063 (1994). Because the objection at trial was based on the hearsay rule, we apply the nonconstitutional standard of harmless error: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *Id*. at 706; Fed. R. Crim. P. 52(a); *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir.1995) (concluding that an error is deemed harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect") (quotation marks and citations omitted).

Keeping the harmless-error standard in mind, we note Ms. Chavez's taped conversations with Mr. Maldonado alone presented sufficient evidence for the jury to determine she participated in the marijuana conspiracy. Moreover, as discussed above, Ms. Chavez's attorney alluded to the link between Ms. Chavez, Alonso, and Mr. Maldonado in his opening statement, and inquired into it on cross-examination of Agent Alvarado and Special Agent Lane. Finally, Special

Agent Lane's testimony was also sufficient for a jury to conclude Ms. Chavez was Alonso's contact and was expecting delivery of the marijuana. Therefore, even if the district court committed a procedural error by admitting the piece of paper bearing Ms. Chavez's phone number and the phrase "de parte de Alonso," we do not believe it substantially impacted on the outcome of the case.

B. Two-Point Increase for Obstruction of Justice

Ms. Chavez contends the district court erred by imposing a two-level enhancement of her sentence for obstruction of justice pursuant to United States Sentencing Guidelines § 3C1.1 after determining she committed perjury during her trial testimony. We review for clear error the district court's factual findings supporting the application of a particular sentencing guidelines provision and its legal conclusions *de novo*. *United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir. 1997); *United States v. Lang*, 81 F.3d 955, 968 (10th Cir. 1996). The sentencing guidelines mandate a two-point adjustment upward if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Obstruction of justice includes perjured testimony at trial. U.S.S.G. § 3C1.1, comment, (n.4(b)); *United States v. Hargus*, 128 F.3d 1358, 1365 (10th Cir. 1997), *cert. denied*, 523 U.S.

1079 (1998); *United States v. Copus*, 110 F.3d 1529, 1535 (10th Cir. 1997); *Lang*, 81 F.3d at 968; *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir.), *cert. denied*, 515 U.S. 1167 (1995). "The mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993) (noting "[a]n automatic finding of untruthfulness" would violate a defendant's constitutional rights). "To establish a defendant's perjury, the court must find that [s]he (1) when testifying under oath, gives false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Copus*, 110 F.3d at 1536 (quotation marks and citation omitted). "'Material' evidence, fact, statement or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6).

In deciding to impose the two point increase for obstruction of justice, the district court stated: "I can tell you, I presided over the trial, and I had the distinct impression Ms. Chavez committed perjury. I was going to sentence her at the top end of the guidelines, but since they've added the two points for that, I'll accept that as the appropriate adjustment." The district court determined Ms.

Chavez committed perjury by: (1) denying she knew the truck Mr. Maldonado drove contained marijuana; (2) testifying she had no prior information or knowledge about the purpose of Mr. Maldonado's telephone call and did not expect a telephone call; (3) denying she had any criminal intent when she went to meet Mr. Maldonado the morning of her arrest; and (4) by testifying she was referring to the money for gasoline when she responded to Mr. Maldonado's reminders not to forget the money for Alonso and him.

Ms. Chavez contends the district court made these determinations in error and asserts her testimony does not rise to the level of perjury merely because the jury and the court did not believe her. She further argues the quality of the evidence against her is entirely circumstantial and subject to different interpretations, and thus does not support an inference she lied about her involvement in the drug delivery. At the sentencing hearing, the court rejected Ms. Chavez's explanation of her comments to Mr. Maldonado when he called about the drug delivery – *i.e.*, that she was confused during the telephone conversations because she had just awakened and because she and the caller switched back and forth between Spanish and English. The court pointed out Ms. Chavez told the same story to the jury at trial, which the jury rejected. The court concluded "the whole story about going to assist someone with gas in the middle

of the night was inherently unbelievable." The district court found Ms. Chavez's testimony was meant to influence the jury to acquit her, and her statements were not the result of confusion, mistake or faulty memory, but willful. We agree with the district court. Ms. Chavez's story was inherently unbelievable. Furthermore, ample evidence exists in the record to support the district court's determination Ms. Chavez lied under oath. The tape recordings of the telephone calls clearly support the inference Ms. Chavez expected a drug delivery that night and went out to meet the courier. Thus, we conclude the district court did not err by imposing the two-level U.S.S.G. § 3C1.1 enhancement for perjury.

C. Denial of a Two-Point Decrease for Minor Participation

Finally, Ms. Chavez contends the district court erred by failing to grant her a two-point decrease for acting as a minor participant in the crime. We review a sentencing court's refusal to award a defendant minor or minimal participant status for clear error because it is a finding of fact. *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir.), *cert. denied*, 512 U.S. 1244 (1994). Under U.S.S.G. § 3B1.2(b), the sentencing court may grant a two-point reduction if the defendant proves by a preponderance of the evidence she acted as a minor participant in the offense. *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994); U.S.S.G. § 3B1.2(b). The presentence report indicated there were "no

aggravating or mitigating circumstances" to warrant a role adjustment for Ms. Chavez under § 3B1.2. Ms. Chavez objected to the report on the grounds she acted merely as "a one-time courier carrying a small amount of drugs" who "had a minor role in the entire scheme, even if that was not true of the offense of conviction." We conclude Ms. Chavez did not prove by a preponderance of the evidence she performed merely as a one-time courier. Even if she had made a sufficient showing she was a one-time courier, we have held a drug courier is not per se a minor participant in a drug transaction. *Ballard*, 16 F.3d at 1115 (noting a courier's transportation of illegal drugs has been held to be "as indispensable to the completion of the criminal activity as those of the seller ... and the buyer ... and ... to debate which one is less culpable than the others is not productive.") (quotation marks and citations omitted). Furthermore, in this case, the evidence weighs against such an interpretation. The evidence indicates Ms. Chavez controlled the transfer of money in this transaction, became the only confirmed recipient of the drugs, and acted as the contact person. Thus, we conclude the district court did not err by determining Ms. Chavez failed to prove she was a minor participant and correctly denied her request for a downward departure under U.S.S.G. § 3B1.2.

For the reasons stated above, we **AFFIRM** the decision of the district court.