F I L E D
United States Court of Appeals
Tenth Circuit

JAN 11 2001

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DEAN D. PHELAN,

    Defendant-Appellant.

No. 00-1209

(D.C. No. 99-CR-217-D)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **PORFILIO**, and **BRORBY**, Circuit Judges.

In June 1999, a federal grand jury indicted Defendant Dean D. Phelan on eight

counts of knowingly making false statements and reports in loan applications for the

purpose of influencing the FDIC, in violation of 18 U.S.C. § 1014. Following a five day

trial, a jury found Defendant guilty on all eight counts. The district court sentenced

Defendant to 27 months imprisonment on each count to run concurrently. Defendant

appeals his conviction, challenging the district court's admission of his former attorney's

testimony. Defendant also challenges the district court's calculation of the amount of loss

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

for sentencing purposes under U.S.S.G. § 2F1.1, and application of a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 for perjury. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm.

I.

Between July 1994 and March 1996, Defendant submitted false documents in connection with eight separate loan applications involving four separate banks. The false documents included personal income tax returns for the years 1992-94 reflecting Defendant's adjusted gross income as several hundred thousand dollars more than the amount on the income tax returns Defendant actually filed. Defendant used the false information with mixed success to obtain loans from Colorado National Bank, First Community Industrial Bank, Key Bank, and Women's Bank. At trial, Defendant admitted that he had inflated his assets on the loan applications. Defendant admitted that on each loan application, he represented that he owned municipal bonds valued in excess of $3 million held by Prudential-Bache. Defendant further admitted that he had closed his Prudential-Bache account and the bonds did not exist.

For purposes of Defendant's appeal, only the specific facts surrounding the Women's Bank loans are relevant. In 1995, Defendant and a partner formed Main Street Partners, Inc. for the purpose of constructing and operating a casino in Cripple Creek, Colorado. Main Street Partners joined another partnership to develop Paradise Casino. In September 1995, Main Street Partners approached Donald Chance, a loan officer at

2

Women's Bank, about a $270,000 loan to finance Paradise Casino. Defendant provided Chance with false information and documentation regarding Defendant's assets and income. When Chance originally proposed that the loan be secured by Defendant's purported bond holdings, Defendant objected. Based on the false financial information, Women's Bank ultimately approved an unsecured $270,000 loan to Defendant and his partners. Paradise Casino served as a guarantor of the loan. The promissory note contained standard language indicating Women's Bank had a right of set off under which the bank could keep any money the guarantor had in its account at the bank in the event of a default on the loan.

In March 1996, Defendant applied for an additional loan for the casino venture. Women's Bank approved the additional loan for $150,000 as a personal line of credit, secured by Defendant's residence. A Women's Bank bank officer attempted to verify the existence of the Defendant's claimed bond holdings. When Defendant refused to provide further documentation, Women's Bank canceled the line of credit and, at Defendant's insistence, released the deed of trust on Defendant's home.

At that point, Women's Bank declared the original $270,000 loan in default. Women's Bank did not exercise its right of set off against Paradise Casino's checking account. According to the Government's offer of proof, Women's Bank decided not to exercise its right of set off because Paradise Casino's success was the bank's only hope of recovering the full amount of the loan. According to Women's Bank, seizing the casino's

bank account would have destroyed that possibility. Paradise Casino nevertheless failed and filed bankruptcy. The Women's Bank loan was never repaid.

II.

First, Defendant challenges his conviction. Defendant argues the district court erroneously allowed Defendant's former attorney, Jacques Machol, to testify at Defendant's trial, violating the attorney-client privilege and denying him a fair trial. The district court concluded that Defendant failed to establish the applicability of the attorney-client privilege. "We review the factual findings underlying the court's attorney-client privilege ruling for clear error and purely legal questions de novo." In re Grand Jury Subpoenas, 144 F.3d 653, 658 (10th Cir. 1998).

The attorney-client privilege "protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his or her capacity as a legal advisor." Matter of Grand Jury Subpoena Duces Tecum, 697 F.2d 277, 278 (10th Cir. 1983) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). The privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" Swindler & Berlin v. United States, 524 U.S. 399, 403 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). To be protected by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy. United States v. Johnston, 146 F.3d 785, 794 (10th

4

Cir. 1998). The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability. In re Foster, 188 F.3d 1259, 1264 (10th Cir. 1999).

Machol had represented Defendant in two separate prior collection matters unrelated to the loans involved in the present case. Defendant claims that Machol conveyed the following two privileged conversations during trial: (1) Defendant told Machol to convey the financial schedules to Chance at Women's Bank and (2) Machol asked Defendant "where the bonds were" and Defendant replied that he had "several years or some years earlier liquidated or sold them and that the money had been moved–or out of state."

Defendant fails to demonstrate that the above conversations related to legal advice or strategy. See Johnston, 146 F.3d at 794. Machol testified that he did not provide legal advice to any individual involved with Paradise Casino, including Defendant. Machol further testified as to his understanding that Defendant was separately seeking legal advice from other attorneys to review any documents which Machol prepared. Accordingly, the district court did not clearly err by allowing Machol to testify during trial.

Moreover, even if the statements were cloaked in the lawyer-client privilege, their admission in evidence would be harmless error. See Fed. R. Evid. 103 ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); See Frontier Ref., Inc. v. Gorman-Rupp, Inc., 136 F.3d 695, 705

(10th Cir. 1998) (error in admitting evidence protected by attorney-client privilege "requires reversal only if it affected the substantial rights of the parties"). Defendant claims repetition of the first statement to the jury implied that Defendant had specifically asked that false information be conveyed to the bank. The same information, however, was admitted at trial in other forms. A Paradise Casino investor, Gordon Beckstead, testified that Defendant gave him the same falsified financial information with instructions to give it to Women's Bank.

We have previously stated that a qualitative difference exists between evidence received from a defendant's own attorney and evidence received from other witnesses. Id. at 706 (noting a great danger exists that a jury would accord undue weight to the testimony and admissions of a party's own lawyer). Here, however, Machol informed the jury that he was not acting as Defendant's attorney. Further, at trial, Defendant admitted that he falsified a securities statement specifically to send it to Chance at Women's Bank. A jury would likely accord Defendant's own admissions greater weight than the testimony of a former attorney.

Regarding the second statement, Defendant argues it indicates that Defendant had known for some time that the bonds did not exist and implied that Defendant had moved money out of the United States in a plan to defraud. Again, this same information was admitted into evidence through Penny Hawkins, with Colorado National Bank. Hawkins testified that to explain irregularities with the financial statements, Defendant told her that

6

a long time ago he had taken the bonds to the Cayman Islands and a Cayman bank had redeemed the bonds. In addition, Defendant admitted he sold his securities in 1991. Because the record without Machol's testimony contained more than sufficient evidence for a rational juror to find, beyond a reasonable doubt, that Defendant committed the charged offenses, Defendant failed to demonstrate prejudice. See United States v. Robinson, 121 F.3d 971, 977 (5th Cir. 1997) (even if privileged information erroneously admitted, such error was harmless because record contained more than sufficient evidence for a rational juror to find defendant guilty beyond a reasonable doubt).

## III.

Next, Defendant challenges his sentence. At sentencing, the district court increased Defendant's offense level by eight-levels pursuant to U.S.S.G. § 2F1.1(b)(1)(I) for causing Women's Bank a $270,000 loss on the unsecured loan.[1] The district court included an additional two-level increase in Defendant's offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice based on a finding that he committed perjury while testifying at trial.

## A.

Defendant argues the district court erred in calculating the amount of loss for purposes of U.S.S.G. § 2F1.1. We review questions of law regarding application of the

---

[1] While the district court cited 2F1.1(b)(J), it appeared to be relying on 2F1.1(b)(I).

7

sentencing guidelines de novo, and findings of fact for clear error. United States v. Wiseman, 172 F.3d 1196, 1217-18 (10th Cir. 1999).

U.S.S.G. § 2F1.1(b)(1)(I) mandates an eight-level offense level increase for a Defendant who causes more than $200,000 in loss. The commentary explains calculation of loss:

> In fraudulent loan application cases . . ., the loss is the actual loss to the victim . . . . For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. . . .

U.S.S.G. § 2F1.1, cmt. n.8(b).

Defendant argues the district court should have reduced the $270,000 loss attributed to the Women's Bank loan by either the $85,000 contained in Paradise Casino's bank account at the time of default or the value of the deed of trust that Defendant signed over to Women's Bank to secure the unrelated $150,000 personal line of credit that the bank ultimately canceled. We agree with the district court that the $270,000 loss should not be reduced by either.

Here, the actual loss is approximately $270,000. Defendant claims Paradise Casino's checking account was an asset pledged to secure the loan from which the bank could have recovered approximately $85,000 at the time of default. Women's Bank indicated that it did not seize the funds in Paradise Casino's account because to do so would have jeopardized the casino venture. According to Women's Bank, the casino's

8

success was the bank's only hope to recover the amount of the loan. By not exercising its right of set off, Women's Bank merely sought to mitigate the loss. Paradise Casino subsequently exhausted the funds in the account to continue its business operation. Paradise Casino ultimately filed bankruptcy. Women's Bank never recovered any funds from Paradise Casino's bank account. Accordingly, the funds contained in Paradise Casino's bank account did not constitute an "amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." U.S.S.G. § 2F1.1.

Defendant's argument with regard to the deed of trust also fails. Defendant pledged the deed of trust to secure a $150,000 line of credit completely separate from the $270,000 loan. Furthermore, Defendant fails to address the fact that Women's Bank canceled the $150,000 line of credit and released the deed of trust when Defendant threatened legal action. Thus, the deed of trust does not constitute "assets pledged to secure" the original $270,000 loan within the meaning of U.S.S.G. § 2F1.1, cmt. n.8(b). Accordingly, the district court properly refused to reduce the $270,000 loss.

## B.

Finally, Defendant argues the district court erroneously found Defendant committed perjury and consequently increased the offense level by two-levels pursuant to U.S.S.G. § 3C1.1. "We review the district court's factual findings as to the enhancement under § 3C1.1 for clear error, and review de novo the court's interpretation of the [s]entencing [g]uidelines." United States v. Cerrato-Reyes, 176 F.3d 1253, 1263 (10th

Cir. 1999).

Section 3C1.1 of the sentencing guidelines mandates a two-level increase in offense level if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Obstruction of justice includes committing perjury at trial. U.S.S.G. § 3C1.1, cmt. n.4(b); United States v. Chaves, 229 F.3d 946, 954-55 (10th Cir. 2000). "'The mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury.'" Id. (quoting United States v. Markum, 4 F.3d 891, 897 (10th Cir.1993) (noting "[a]n automatic finding of untruthfulness" would violate a defendant's constitutional rights)). To establish a defendant's perjury, the court must first find that the defendant when testifying under oath, (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. Id. at 1536. The sentencing guidelines define "material evidence, fact, statement, or information" as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n.6. In addition, the court must specifically identify the perjured testimony supporting the offense level increase for obstruction of justice. United States v. Medina-Estrada, 81 F.3d 981, 987 (10th Cir. 1996).

At trial, Defendant testified that after he submitted the false financial information

to Women's Bank, he told Chance that the information was false and instructed Chance not to use the information. Defendant further testified that Chance nevertheless insisted on using the false information to "pump up" Defendant's application. On rebuttal, Chance denied that Defendant informed him that the statements were false. The district court concluded that Defendant's testimony was false because no motive existed for Chance to include clearly fraudulent information in the loan application. The district court further concluded that the false testimony was material because the false information Defendant provided to the bank "was the very information that the bank used to make its lending decision." Finally, the district court concluded Defendant's "willful intent to provide false testimony was not the result of confusion, mistake, or faulty memory."

Defendant does not challenge the district court's conclusion that Defendant's testimony that he told Chance not to use the false loan application was false. Instead, Defendant argues his testimony was not material to the jury's decision. We agree with the district court's conclusion that Defendant's false testimony was material to the jury's verdict. One of the elements of the crime charged was whether Defendant made false statements to Women's Bank for the purpose of influencing the bank's decision. See 18 U.S.C. § 1014; United States v. Rothhammer, 64 F.3d 554, 557 (10th Cir. 1995). Accordingly, Defendant's testimony that he instructed Chance not to use the false financial information was material because it related to whether Defendant submitted the

11

information to the bank for the purpose of influencing the bank's decision. Because Defendant's false testimony constituted perjury, the district court properly applied a two-level enhancement pursuant to U.S.S.G. § 3C1.1.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge