FILED
United States Court of Appeals
Tenth Circuit

August 4, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DANIEL COLLINS,

Defendant–Appellant.

No. 08-3119

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 07-CR-10159-MLB-1)

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for
Defendant–Appellant.

Donald Oakley, Assistant United States Attorney (Marietta Parker, Acting United
States Attorney, and Matthew T. Treaster, Assistant United States Attorney, with
him on the briefs), Wichita, Kansas, for Plaintiff–Appellee.

Before **LUCERO**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

**LUCERO**, Circuit Judge.

A jury convicted Daniel Collins of maliciously damaging a building by

means of an explosive in violation of 18 U.S.C. §§ 844(i) and 2. He was

sentenced to 60 months' imprisonment and two years' supervised release. At trial, the district court overruled Collins' hearsay and prejudice objections to the admission of a two hour and twenty minute audio recording of investigators interrogating him the day of the crime. On appeal, he argues that the admission of this evidence was in error and seeks a new trial. However, we need not decide if the district court erred in admitting the entire recording because any such error was harmless on this record. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On August 17, 2007, Collins and two acquaintances, Antonio Ray and Nathan Gunter, acquired three explosives. They then detonated those explosives at a Wichita, Kansas school and two apartment buildings, including the Kingsborough Apartments. Collins, Ray, and Gunter were arrested shortly after the explosions, and Collins was subsequently charged with two counts of maliciously damaging the apartment buildings by means of an explosive in violation of 18 U.S.C. §§ 844(i) and 2 and one count of knowingly stealing explosive materials that have moved in interstate commerce in violation of 18 U.S.C. §§ 844(k) and 2.

At trial, several eyewitnesses testified to Collins' involvement in the charged incidents. Ray, who had pled guilty to lesser charges, testified that Gunter drove him and Collins in a white SUV to each of the locations. Ray

explained that at the Kingsborough Apartments, he held a stairwell door open while Collins placed a lit explosive inside.

Several residents of the Kingsborough Apartments also testified. Michael Vickers stated that he saw two males near a door to the building, one with a lighter complexion than the other. He said that the lighter complected male held the door open while the other threw something inside. Vickers saw a trail of smoke and then the explosion occurred. At trial, Vickers identified Collins as the darker complected male he had seen on August 17. Tina Disabatino also testified to seeing two males in the vicinity of the Kingsborough buildings moments before and after the explosion, and she too identified Collins as one of the individuals. Angela Chandler testified to seeing a white SUV immediately prior to the explosion and two males get into it immediately after the explosion, identifying Collins as one of those two men. Both Vickers and Chandler called 9-1-1, and Chandler provided police with a license plate number that partially matched the plate on the white SUV stopped by police shortly thereafter.

When the SUV was stopped, Gunter was driving, Ray was in the front passenger seat, and Collins was in the rear. At the scene, Officer Daniel Brown of the Wichita Police Department ("WPD") handcuffed Collins and searched his pockets, finding a lighter. Officer Brown testified to this at trial, and the government also called a number of other police officers and agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), who testified to the

-3-

course of the investigation and the explosives involved.

After the ATF agents, the government called WPD Detective Sarah Hamilton. Hamilton explained that she and ATF Special Agent Greg Heiert interviewed Collins the day he was arrested for approximately three and a half hours, with an hour and a half break in the middle. As part of Hamilton's testimony, the government played an audio recording of this interview for the jury.[1] Before Hamilton testified, Collins objected to introduction of the unredacted recording, arguing that seventy to eighty percent of the dialogue consisted of inadmissible hearsay statements made by Hamilton and Heiert. He objected further that the recording was unduly prejudicial because it contained many ad hominem attacks on Collins. Although Collins' counsel acknowledged that Collins' own statements were not hearsay, he contended that the bulk of the recording did not consist of such statements.

Collins' objections on these grounds were overruled.[2] On the theory that the officers' statements provided context for Collins' statements, the district court allowed the government to play the recording. Before it was played, however, the court admonished the jury:

---

[1] The recording itself was missing approximately the last hour of the first session and the final ten minutes of the second session because Hamilton's digital recorder ran out of space.

[2] The court did grant two more specific objections and redacted brief portions of the recording revealing aspects of Collins' juvenile history.

I want to caution you . . . . [Y]ou'll hear that the officers said to the Defendant that they knew what the evidence—what had happened, they had talked to other people, I don't know what all; but in total, in total, everything the officers say to the Defendant on this tape is not evidence. So you can hear it, you have to hear it to place everything in context, but if the officers say, for example, and I don't know that they do, but if they say that we've talked to Antonio Ray and he told us, that's not evidence. You must not consider it as evidence. The only evidence is the statement, statements of the Defendant.

As Collins accurately characterizes, significant portions of the recording do not reflect Collins' substantive statements. On more than one occasion, Hamilton speaks at length without attempting to prompt a response from Collins. One example of such an soliloquy:

[Hamilton]: OK; here's the thing[. W]e were in here talking to you for a long time earlier alright and we[—]I told you what we were gonna do[.] [W]e're gonna go out[,] we're gonna talk to the other detectives who are um going through your all[']s car OK, who have been talkin to the other folks that you were arrested with today and you know what, your story's a heap of [expletive] OK, so we're back in here again because your story is the worst of all OK and we're just gonna lay it out like it is OK[. Y]ou're not tellin us the whole truth OK, and you need ta start[.] [O]K like we said earlier, there's parts to it that are true but you're not tellin us everything and you know what[,] the only person that hurt[—]the only person that that hurts is you; I know that there's things on the back seat of that car OK, when you when you guys got picked up today remember that you do, you're shacking [sic] your head yes, you remember that[.]

[Collins]: Uh huh[.]

At other times, the statements by the officers are shorter, but consist of the officers representing the state of the evidence:

[Heiert]: There's four people that put you at, at those scenes

[Hamilton]: Who have never seen you before in their entire life but they remember you because you just blew some part of their house up[.]

[Collins]: Four people remember me at the scene[?]

[Hamilton]: Uh huh[.]

[Collins]: I didn't even get out of the car you know[.]

[Hamilton]: Yes you did[.]

More than once, Hamilton accused Collins of sheer callousness, such as:

[Hamilton]: But it matters to you in the long run because it affects how you go through this process here[.  P]eople need to know why you did something and how OK, the big thing is why are you so cold and heartless that you can sit here and say that I don't care that there were babies sleeping next door to that hallway, they're not my babies[,] I don't live there[.  B]y you not sayin something and not saying why you did something[—]that's the big question out there and you know what[.]

Although the recording was rife with such exchanges, it also contained many occasions when Collins answered questions and spoke at length.  Near the end of the second session, Collins admitted involvement in the Kingsborough Apartments incident and admitted that he had lied earlier in the interview. Collins did not object to the jury hearing these latter admissions.

When the court instructed the jury prior to deliberations, it included Instruction No. 22 regarding the recording:

Evidence has been presented about a statement attributed to the defendant alleged to have been made after the commission of the crimes charged in this case but not made in court.  Such evidence should always be considered by you with caution and weighed with

care. . . .

> . . . Statements of law enforcement officers made at the time of questioning are not to be considered for their truth, but only as a consideration of how the defendant's statement was given.

Collins was convicted of maliciously damaging the Kingsborough Apartments by means of an explosive but acquitted of the other two charges. He timely appealed.

**II**

On appeal, Collins challenges only the admission of the audio recording. He contends first that the district court erred in allowing the jury to hear countless hearsay statements contained in the first two hours of the recording. We review the admission of evidence at trial for abuse of discretion. United States v. Chavez, 229 F.3d 946, 950 (10th Cir. 2000). "Because hearsay determinations are particularly fact and case specific, our review of those decisions is especially deferential." Id. (quotation omitted). Further, "[t]his court applies a harmless error standard when reviewing trial courts' rulings on hearsay objections resting solely on the Federal Rules of Evidence." United States v. Jones, 44 F.3d 860, 873 (10th Cir. 1995) (citation omitted). "A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect." Id. (citation omitted).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." Fed. R. Evid. 801(c). Because a party's own out of court statements offered against that party are not hearsay, Fed. R. Evid. 801(d)(2)(A), we are confronted with a single exhibit that contains numerous statements that are indisputably not hearsay—those made by Collins—and other statements made by the officers that arguably are hearsay. Contending that Hamilton's and Heiert's statements are not hearsay, the government relies on the malleable notion that an interviewer's statements are offered to provide context for the interviewee's answers, rather than for the truth of the matter asserted. See United States v. Gajo, 290 F.3d 922, 930 (7th Cir. 2002) (collecting cases supporting the proposition that "[i]t is well settled that [admitting evidence of both sides of a conversation] is appropriate because statements are not hearsay to the extent they are offered for context and not for . . . the truth of the matter asserted" (citations omitted)).

We are skeptical of the government's argument that all of Hamilton's and Heiert's statements in the recording provide meaningful context for Collins' statements. Ad hominem attacks, accusations of lying, and general posturing may be standard in police interrogations, but they have little evidentiary value unless the government intended for the jury to believe the truth of those statements. Perhaps more problematically, Hamilton's and Heiert's statements in the recording unequivocally corroborated evidence that had just been presented to the jury and vouched for the credibility of individuals who had just testified. Invoking the

word "context" does not permit an end-run around the hearsay rules such that the government may smuggle into evidence all interviewer statements. We view such evidence with a particularly jaundiced eye when, as here, the officers' statements regularly overwhelm the defendant's.

Nonetheless, we are mindful that the district court faced an unenviable task in deciding if and how to redact a lengthy recording in which both problematic and perfectly admissible statements are scattered throughout. See Chavez, 229 F.3d at 950. But we need not decide whether it was error to admit the entire recording because we conclude that if it was error, the error was harmless. See Jones, 44 F.3d at 874 ("Even if the district court erroneously admitted testimony of the contents of [the] conversation, we nonetheless conclude that the admission of this testimony was harmless error."). Given the strength of the evidence against Collins on the count of conviction, we conclude that Hamilton's and Heiert's statements did not have a substantial influence on the outcome of the trial. See id. at 873.

Collins was convicted only for the explosion at Kingsborough Apartments. He concedes that his own statements heard in the recording were admissible non-hearsay. In those statements, he admits involvement in that incident and admits to lying earlier in the interview when he said he remained in the car. Even without the remainder of the recording, Collins' admissions alone provide strong evidence of guilt. Moreover, two eyewitnesses, including Collins' codefendant, testified to

seeing Collins throw an explosive into the stairwell, and a police officer testified to finding a lighter on his person when he was arrested. Two other eyewitnesses testified that they saw Collins walking back to the car after the explosion, providing strong evidence of aiding or abetting. See 18 U.S.C. § 2(a). All four of these witnesses testified that Collins was laughing at the time. We also consider that the jury was instructed not to consider the statements of the officers as evidence. See United States v. Lauder, 409 F.3d 1254, 1262 (10th Cir. 2005) (relying in part on curative instruction to render error harmless). Taking into account all of the evidence against Collins and the presumption that juries follow curative instructions, United States v. Jones, 530 F.3d 1292, 1303 (10th Cir. 2008), we conclude that admission of Hamilton's and Heiert's statements as part of the recording, if error, was harmless.

### III

Collins also argues that the admission of the entirety of the recording was substantially more prejudicial than probative in violation of Federal Rule of Evidence 403. To this end, Collins contends that only his admissions in the concluding minutes of the recording were relevant, and that the rest of the recording was both irrelevant and inflammatory because Hamilton and Heiert referred to hypothetical injuries and improperly challenged Collins' veracity and humanity. As with hearsay, error in the admission of unduly prejudicial evidence is susceptible to harmless error. See United States v. Smith, 534 F.3d 1211, 1220

-10-

(10th Cir. 2008) (declining to determine whether a district court erred under Rule 403 because any possible error was harmless).

We held in Part II that even if Hamilton's and Heiert's statements were hearsay, their admission did not have a substantial influence on the outcome of the trial. Because the inflammatory statements cited by Collins are a subset of those he argues are hearsay, it follows that the admission of such statements was also harmless under Rule 403.[3]

**IV**

**AFFIRMED**.

---

[3] Before this court, Collins also argues that the admission of unduly prejudicial evidence violates his due process rights under the Fifth Amendment. Because he raises this argument for the first time on appeal, we decline to decide it. See United States v. Jarvis, 499 F.3d 1196, 1202 (10th Cir. 2007) ("[We] exercise [our] discretion to hear issues not raised below only in the most unusual circumstances." (quotation omitted)).