# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-2274

_____

United States of America,　　　　*

　　　　　　　　　　　　　　　　*

　　　　　　Appellee,　　　　　　*

　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　　v.　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　*　　District of Nebraska.

Jose Ramos-Caraballo,　　　　　*

　　　　　　　　　　　　　　　　*　　　　[PUBLISHED]

　　　　　　Appellant.　　　　　　*

_____

Submitted: February 9, 2004
Filed: July 26, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Jose Ramos-Caraballo was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841, resulting from a traffic stop along Interstate Highway 80 in Omaha, Nebraska. He argues on appeal that the stop was unreasonable and that the district court erroneously denied his motion to suppress. He also asserts that evidentiary errors unfairly prejudiced his defense. We affirm.

## I.

At approximately 12:50 a.m. on March 16, 2002, Officer Aaron Hanson of the Omaha Police Department stopped an east-bound vehicle on I-80 in Omaha after he observed "some type of a large item hanging from the rearview mirror" in violation of Nebraska law. (Trial Tr. at 27-28.) There were two occupants in the vehicle: Ramos-Caraballo, the driver, and Frank Alvarez-Gayan, the passenger. Officer Hanson said they appeared nervous as he approached the vehicle. Hanson also noticed a strong smell of air freshener. On learning that the occupants primarily spoke Spanish, Officer Hanson attempted to converse with them in Spanish as best he could, informing them of the basis for the stop.

The item hanging from the rearview mirror turned out to be a seven-and-three-quarters-inch long air freshener shaped like a tree and still partially enclosed in its original packaging. Ramos-Caraballo immediately removed it on learning that it was the basis for the stop. Another air freshener was hanging on the steering column, and when Ramos-Caraballo retrieved the proof of insurance from the glove compartment, Officer Hanson noticed a can of deodorizer air spray in the compartment. Officer Hanson became suspicious because in his experience, strong perfume or deodorizers are often used to mask the transportation of illegal narcotics.

Ramos-Caraballo accompanied Officer Hanson to the police cruiser while the officer verified the registration and license. Through conversation, Hanson learned that the two men were traveling from California to Connecticut to visit Ramos-Caraballo's sick grandmother. Later, Ramos-Caraballo indicated that they were traveling to Massachusetts to visit his sick grandmother. The registration and license were valid, but Officer Hanson noticed that the car had been registered and insured in California only three days before this stop. He issued only a warning citation for the view obstruction violation, explaining as best he could in Spanish that no fine or

2

penalty was imposed. Officer Hanson told Ramos-Caraballo to drive carefully and shook his hand.

As Ramos-Caraballo began to exit the cruiser, however, Hanson asked if they had any weapons, bombs, or narcotics in the vehicle. Ramos-Caraballo said no, but Hanson noticed that he looked away when he answered the question about the narcotics. He and the passenger both consented to Officer Hanson's request to search the vehicle after reading a Spanish language consent form. In the trunk of the car, Officer Hanson noticed that the spare tire's metal rim looked worn. He retrieved a density meter from his patrol vehicle and determined that one half of the spare tire was more dense than the other. Ultimately, Hanson uncovered 955.8 grams of cocaine hidden in the spare tire. Officer Mark Langan testified at trial that this amount of cocaine is not associated with personal use but with distribution. Officer Hanson testified that when he arrested Ramos-Caraballo, he appeared deflated and did not show much emotion.

Prior to trial, Ramos-Caraballo filed a motion to suppress the evidence seized as a result of the traffic stop and search, arguing that Officer Hanson stopped his vehicle without reasonable suspicion. The district court denied the motion, and the case proceeded to trial.

During trial, defense counsel attempted to impeach Officer Hanson with claimed inconsistent statements in his police report as well as statements in his sworn testimony before the grand jury and at the suppression hearing. Most of these statements concerned the defendant's demeanor and mannerisms, and they exposed at best slight deviations from Officer Hanson's trial testimony.

On redirect examination, the government offered as exhibits Officer Hanson's police report, a transcript of his grand jury testimony, and a transcript of his testimony from the suppression hearing, asserting that these entire documents were necessary

to place all of his statements in context, citing Federal Rule of Evidence 106. The defense counsel requested a showing of what portions of these exhibits were necessary to place the impeaching statements in context, but the government asserted it was entitled to submit them in their entirety. Over defense counsel's objection, the district court admitted the exhibits in their entirety, subject to only a few agreed-upon redactions. The jury convicted Ramos-Caraballo of possession with intent to distribute cocaine, and he now appeals.

## II.
### A. Motion to Suppress

Ramos-Caraballo challenges the district court's denial of his motion to suppress, arguing that, contrary to the Fourth Amendment, the officer did not have a reasonable articulable basis for the stop of his vehicle. "When reviewing the district court's ruling on a motion to suppress, we review its fact-finding for clear error and its ultimate application of the law to the facts de novo." United States v. Scroggins, 361 F.3d 1075, 1079 (8th Cir. 2004). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

An automobile stop is subject to the Fourth Amendment imperative that the stop must be reasonable. Whren v. United States, 517 U.S. 806, 810 (1996). A vehicle stop is reasonable if it is supported by either probable cause to believe that a traffic violation has occurred, id., or an articulable and reasonable suspicion that criminal activity is afoot, Delaware v Prouse, 440 U.S. 648, 663 (1979). "It is well established that a traffic violation–however minor–creates probable cause to stop the driver of a vehicle." United States v. Hamby, 59 F.3d 99, 101 (8th Cir. 1995) (internal quotation marks omitted).

4

Nebraska motor vehicle law provides that it is "unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such a manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle."  Neb. Rev. Stat. § 60-6,256 (Reissue 1998).  Officer Hanson testified that he observed a violation of this provision when Ramos-Caraballo's car passed him on the interstate with an air-freshener hanging from the rearview mirror.  Ramos-Caraballo asserts that the statute is ambiguous and should be construed to permit objects to hang from the mirror if they do not <u>significantly</u> obstruct or interfere with the driver's view through the windshield so as to create a safety hazard.  Under this reading of the statute, he argues that Officer Hanson did not have probable cause to stop his vehicle because the air freshener did not amount to a significant view obstruction.

We respectfully disagree with this reading of the statute.  The plain language of the statute unambiguously provides that "any object" that obstructs a clear and full view through the windshield violates Nebraska law.  Neb. Rev. Stat. § 60-6,256.  The wording of the statute plainly indicates that the Nebraska legislature has already concluded as a matter of policy that any obstruction (not only a <u>significant</u> obstruction) of a clear and full view of the road is a safety hazard subject to regulation through this statute.  <u>See</u> <u>id.</u>  Officer Hanson testified at the suppression hearing that he observed "an item hanging from the rear view mirror" in violation of Nebraska's state traffic laws.  (Suppression Hr'g Tr. at 14.)  His observation provided probable cause for him to stop the vehicle, i.e., he had probable cause to believe he had observed a violation of Nebraska's traffic laws.

Ramos-Caraballo also argues that Officer Hanson's observations were not reasonably trustworthy because the vehicle was traveling sixty miles an hour, it was dark outside, and Hanson observed the alleged violation for only a short time as the

car passed him and Hanson began to follow him–approximately three seconds. Hanson testified that he could continue to see the obstruction through Ramos-Caraballo's rear window as he followed them, "I guess just as far as the human eye would allow to see an object like that," and he signaled for them to pull over. The officer was not mistaken as the object proved to be a large Christmas tree air freshener still partially in its packaging hanging close to the windshield. The district court did not clearly err in crediting his testimony as trustworthy, and his articulated objective and reasonable belief that a violation of law had occurred amounted to probable cause. See United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996) ("Probable cause exists where an officer objectively has a reasonable basis for believing that the driver has breached a traffic law.").

We affirm the district court's denial of Ramos-Caraballo's motion to suppress.

## B. Evidentiary Rulings

During trial, Ramos-Caraballo attempted to impeach Officer Hanson on cross-examination with what he characterizes as prior inconsistent statements made in the officer's grand jury testimony, suppression hearing testimony, and police report. The defense attorney impeached Hanson on some particulars, demonstrating among other things that, while Hanson's trial testimony was that Ramos-Caraballo had thrown down the air freshener when advised of the violation, his police report simply said Ramos-Caraballo placed it on the console between the seats. The defense counsel brought up Hanson's failure to mention in his police report that a handwritten note with the grandmother's name and address was found in Ramos-Caraballo's wallet. The defense also demonstrated particular variances between Hanson's trial testimony and his prior sworn testimony about the demeanor of Ramos-Caraballo and his passenger during the stop. Hanson testified at trial that they appeared "overly nervous," "wide-eyed nervous," and more nervous "than 95% of the people," while his prior sworn testimony at the grand jury proceedings and the suppression hearing

stated only that they appeared nervous. The defense attacked Hanson's trial testimony describing the perfumed odor as he approached the car as "overwhelming," whereas his prior testimony simply indicated that the odor was "strong." Also, the defense contrasted Hanson's trial description of Ramos-Caraballo's demeanor when he received the consent to search form as "overly nervous" with his suppression hearing testimony that the defendant was not extremely nervous when asked to consent to a search.

On redirect examination, the government offered three exhibits: Exhibit 7, the complete grand jury testimony of Officer Aaron Hanson; Exhibit 8, the complete transcript of Officer Hanson's testimony at the suppression hearing; and Exhibit 103, Officer Hanson's police report from March 16, 2002. Defense counsel objected to the admission of these exhibits in their entirety. The government countered that because defense counsel referenced parts of these documents, it was entitled to admit each document in its entirety pursuant to Federal Rule of Evidence 106 to prevent the jury from hearing statements taken out of context. The district court admitted the exhibits, redacted to some degree by agreement of the parties, over Ramos-Caraballo's objection.

In considering claims of evidentiary error in applying Rule 106, we give substantial deference to the district court's decisions on admissibility and will find error only if there has been a clear abuse of discretion. United States v. Bolden, 92 F.3d 686, 687 (8th Cir. 1996); see United States v. King, 351 F.3d 859, 866 (8th Cir. 2003) (reviewing Rule 106 admissibility decision for an abuse of discretion), cert. denied, 2004 WL 1300613, 72 USLW 3749 (June 14, 2004); see also United States v. Blue Bird, No. 03-2544, 2004 WL 1398827 (8th Cir. June 23, 2004) (noting that we properly accord deference to the trial judge regarding the application of evidentiary rules that "require a balancing of how particular evidence might affect the jury"). Rule 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that

time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106 (2004). The Advisory Committee Notes to the rule indicate that this is a rule of completeness designed in part to avoid misleading impressions created by taking matters out of context. However, "'the party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted.'" King, 351 F.3d at 866 (quoting United States v. Webber, 255 F.3d 523, 526 (8th Cir. 2001)) (other internal quotations omitted). We have held that "Rule 106, the rule of completeness, which is limited to writings," does not "empower[] a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception." United States v. Woolbright, 831 F.2d 1390, 1395 (8th Cir. 1987). Furthermore, the rule does not come into play when "a few inconsistencies between out-of-court and in-court statements are revealed through cross-examination; rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." United States v. Awon, 135 F.3d 96, 101 (1st Cir. 1998).

This case does not involve a situation where "a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." Id. The defense took what inconsistencies it could find in Officer Hanson's prior testimony and police report and made the most of them, but revealing these inconsistencies did not warrant a submission of the officer's entire prior grand jury testimony, the entirety of his suppression hearing testimony, and his police report. The government made no attempt to specify which portions of these documents were relevant to the issues raised on cross-examination. In our view, this looks more like a government attempt to improperly bolster its witness by admitting the officer's entire testimony again and again through these exhibits. The rule of completeness permits nothing more than setting the context and clarifying the

answers given on cross-examination; it is not proper to admit "all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars." United States v. Simonelli, 237 F.3d 19, 28 (1st Cir.) ("The government was just presenting again the testimony it presented on direct, this time through the testimony about statements to the grand jury."), cert. denied, 534 U.S. 821 (2001); see Tome v. United States, 513 U.S. 150, 157 (1995) (noting in the context of Fed. R. Evid. 801(d)(1)(B) that prior consistent statements, admissible to rebut a recent charge of fabrication, are not admissible "to counter all forms of impeachment or to bolster the witness merely because she has been discredited"). We conclude that, while portions of exhibits 7, 8, and 103 might have been admissible had the government demonstrated the specific excerpts necessary to place the inconsistencies in context, the district court abused its discretion in admitting the transcripts and the police report in their entirety. The government pushed the envelope too far.

Where the prior statements merely bolstered a witness's credibility by repeating testimony already in evidence, however, the error in admitting the prior statements, standing alone, may be harmless. See Simonelli, 237 F.3d at 29. Where the evidence is at most "an extra helping of what the jury had heard before," the evidence is merely cumulative and its admission does not result in reversible error. Id.; see United States v. White, 11 F.3d 1446, 1451 (8th Cir. 1993) ("Erroneously admitting evidence at trial may be said to be harmless if other evidence to the same effect was properly before the jury.") (internal marks omitted). Especially where there is strong evidence of guilt, "some improper repetition of testimony through what a witness said to a grand jury, in a generalized effort to bolster the witness, matter[s] little." Simonelli, 237 F.3d at 29. There could be circumstances, however, where that "extra helping" of evidence "can be so prejudicial as to warrant a new trial." Id. Our review has convinced us that this is not such a case.

We have carefully reviewed the transcripts and exhibits admitted because we are troubled by the error of admitting these exhibits wholesale without requiring the

government to specify the portions that were relevant to the issues allegedly taken out of context on cross-examination. It is significant that Officer Hanson was one of only two witnesses against Ramos-Caraballo, and Officer Hanson was the only witness who testified to the details of this particular stop.[1] It is troubling that the jury was given the opportunity to read and reread his grand jury testimony, suppression hearing testimony, and police report during its deliberations. After reviewing all of the evidence, however, we are satisfied that this error was not so prejudicial as to warrant a new trial. The additional evidence was mostly cumulative of evidence already testified to at trial. Ramos-Caraballo claims prejudice because the admission of the full transcripts inserted into this trial extra issues from the suppression hearing, such as the officer's ability to speak Spanish and his radio communications. We note that Officer Hanson's ability to speak limited Spanish was already in the record (see Trial Tr. at 32), and in any event, we cannot say that these issues were central to or even marginally impacted on the jury's finding of guilt.

Ramos-Caraballo also asserts that prejudice arose from the fact that the grand jury testimony and the police report were not subject to cross-examination. We disagree. In this case, the officer appeared at trial and was subjected to extensive cross-examination concerning alleged inconsistencies between his trial testimony, his prior testimony, and his report. While the entire transcript was not relevant to counter the prior inconsistencies alleged by Ramos-Caraballo, he cannot claim prejudice from the lack of cross-examination in the prior proceedings where the witness testified at trial. There is also no confrontation problem at trial where the declarant testifies as a witness and is "subject to full and effective cross-examination." United States v. Russell, 712 F.2d 1256, 1258 (8th Cir. 1983) (citing California v. Green, 399 U.S. 149, 158 (1970)).

---

[1]The other witness, Sergeant Mark Langan of the Omaha Police Department, testified concerning the amount of cocaine present and its street value.

The evidence, without the contested exhibits, was quite sufficient to demonstrate guilt beyond a reasonable doubt, and the disputed exhibits added nothing of substance to the government's case. Officer Hanson found the cocaine hidden in the car that was registered to, and driven by, Ramos-Caraballo, who was traveling from California across the country. The amount of cocaine found in the car was a quantity that would be sold to high-level dealers and not a quantity that would be associated with personal use. The district court's evidentiary error in this case is not prejudicial because the additional, cumulative testimony "added nothing of substance to the government's evidence, which established the guilt of [the] defendant[] beyond a reasonable doubt." United States v. Beasley, 102 F.3d 1440, 1450 (8th Cir. 1996), cert. denied, 520 U.S. 1246 (1997).

Accordingly, we affirm the judgment of the district court.

_____