**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　　v.

GEORGE LEE BROWN, JR.,

　　　　Defendant - Appellant.

No. 06-5167

N.D. Okla.

(D.C. No. 06-CR-037-001-HDC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Following an accidental gun shot at an apartment, George Lee Brown, Jr.,
was charged with being a felon in possession of a firearm and ammunition in
violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); and possession of
crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(B)(iii) (Count 2). He pled guilty to the firearm charge and a jury found
him guilty of the cocaine charge. Brown claims the district court erred in denying
his motion to suppress evidence, admitting evidence of his gang affiliation and a

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

police report, and enhancing his sentence for obstruction of justice.  We affirm.

## I.  BACKGROUND

As we must, we set forth the evidence in the light most favorable to the jury's verdict.  *See United States v. Lahue*, 261 F.3d 993, 996 n.1 (10th Cir. 2001).  On February 6, 2006, Brown went to visit his girlfriend, Portia Jones, at the apartment she shared with her mother in Tulsa, Oklahoma.  Accompanied by his friend Johnny Chin, they arrived at the apartment complex in a maroon Buick Roadmaster.  As they left the vehicle, Brown removed a handgun and took the keys, but left the car unlocked.  Chin walked to a nearby apartment complex to see his girlfriend.

Brown placed the Buick keys on a table in Jones' apartment.  Although the specific circumstances are unclear, at some point the firearm discharged.  The bullet shattered a plate glass window in the second story apartment, traveled across a sidewalk into a first story apartment, and became lodged in a neighbor's television set.

Brown went to the neighbor's apartment to see if anyone was injured and offered to pay for the broken television.  Shortly thereafter, he returned to Jones' apartment to retrieve the firearm, intending to conceal it in the trash or bushes.  While en route to hide the firearm, Brown saw Chin and told him what happened, then asked him to hide the firearm.  Chin suggested they leave, but Brown wanted to stay to pay for the damages.  Brown went back upstairs and noticed the keys

were no longer on the table. Looking out the window, Brown noticed the neighbor motioning to him. He went back down and the neighbor handed him the bullet retrieved from the television. Brown then went back upstairs, flushed the bullet down the toilet and waited for the maintenance person.

Approximately twenty minutes later, a number of police officers arrived at the apartment complex to investigate a report of "shots fired." (R. Vol. V at 45.) Looking out the shattered apartment window, Brown made eye contact with a police officer who called him downstairs to discuss the incident. In the apartment, Officer Manz interviewed Jones and her mother. Initially, Jones denied a gun had been in the apartment, but she eventually changed her story and stated Brown was showing her the gun when he dropped it, causing it to discharge. She also stated Brown had taken the gun out of the apartment. Manz obtained written consent from Jones' mother to search the apartment for the firearm. Officers did not locate the firearm, but did find an empty shell and a box of ammunition. They also found a set of keys to a Buick with a remote entry key fob tucked in a laundry basket. Jones and her mother stated they did not know to whom the keys belonged. Jones stated Brown owned a yellow Buick or Bonneville. Unable to find the firearm in the apartment, several officers began to search around the apartment complex.

Meanwhile, Brown met with the officer who called him downstairs. A pat-down revealed a digital scale in Brown's pocket. As questioning continued,

Brown informed the police he was a felon, but denied having a firearm or having anything to do with the discharge. Brown also said he was a member of the Gangster Disciples gang, known to law enforcement as "a violent street gang from the St. Louis area." (Appellee's Br. at 10.)

The keys found in the apartment eventually were shown to Brown; he denied ownership. An officer then went to the parking lot and began pushing the unlock button on the key fob to locate the Buick. Another officer questioned Brown about the location of the firearm, telling Brown he feared a child would find it in a bush. Brown responded a child would not find it in a bush.

After the police located the Buick, Brown admitted the firearm was located under the driver's seat of the car. Two officers entered the car, and without touching anything, visually verified the firearm's location. One of the officers observed a baggie containing what appeared to be crack cocaine in the open console. The officers returned to Brown and asked him to consent to a search to recover the firearm and baggie. Brown refused, stating it wasn't his car. Police obtained a search warrant and recovered the firearm and a baggie containing 23.1 grams of a substance which tested positive in the field for cocaine. Brown was transported to the police station for further questioning.

Officer Liedorff interviewed Brown at the station. She reviewed a *Miranda* rights waiver form with him and had him initial each section as it was read, then sign the bottom of the form. During the interview, Brown admitted he was a

member of the Gangster Disciples gang and had caused the firearm to discharge in the apartment. He also admitted to driving the car to the apartment and giving the firearm to his friend. Brown told Liedorff he had "work" in the car and wanted to know if he was going to be charged with it. (R. Vol. VI at 128.) From her experience, Liedorff understood "work" to mean a quantity of drugs and asked Brown if it was "powder or rock." (*Id.*) Brown replied it was a little more than a half ounce of crack cocaine. Shortly after the interview, Liedorff wrote a police report recounting Brown's statements.

A two count indictment was filed on March 7, 2006. Brown subsequently filed a motion to suppress the evidence found in the car. He also filed a motion in limine to "prevent the introduction of evidence . . . that the investigating officers were . . . affiliated with 'the gang unit,' or . . . reference . . . to their [position as] investigators of gang activity." (R. Vol. I at Doc. 18.) The district court denied both motions.

On May 22, 2006, Brown pled guilty to the firearm charge. During trial on the drug charge, Brown denied: 1) telling the police he was a gang member, 2) being asked if the keys belonged to him, 3) the console containing the drugs was open, 4) the police discovered anything (including the digital scale) on his person, and 5) he made statements attributed to him by Liedorff. He testified the police did not ask about the gun until after they searched the car. He did admit to lying to the police about the gun, his knowledge of the car and to flushing the bullet

down the toilet.  The jury returned a verdict of guilty.

At sentencing, the district court found Brown obstructed justice by impeding the investigation and committing perjury during his testimony. Accordingly, it adjusted the offense level of both counts upward two levels for obstruction of justice under §3C1.1 of the United States Sentencing Guidelines.[1] Brown was sentenced to a total of 168 months imprisonment on both convictions.

## II.  DISCUSSION

A.  Motion to Suppress

Brown contends the district court erred in denying his motion to suppress the gun and drugs, arguing the officers lacked probable cause to seize the car keys or search the car.  "When reviewing a district court's denial of a motion to suppress evidence, we accept the district court's factual findings and determinations of witness credibility unless they are clearly erroneous."  *United States v. Harris*, 313 F.3d 1228, 1233 (10th Cir. 2002) (quotation omitted).  We may consider evidence introduced at the suppression hearing and at trial, "veiw[ing] all of the evidence in the light most favorable to the ruling of the district court."  *Id.* (citation omitted).  However "the ultimate question" of Fourth Amendment reasonableness is reviewed *de novo.  Id.*

Here, all factual disputes arise out of the discrepancies between Brown's

---

[1] All references to the United States Sentencing Guidelines herein refer to the 2005 edition unless otherwise indicated.

version of events and the testimony of other witnesses, principally police officers. The district court made explicit credibility determinations and resolved those factual disputes in favor of the government. It concluded the officers lawfully searched the apartment for the gun after obtaining written consent from Jones' mother; the search produced a set of Buick car keys which were not identified by the residents of the apartment. Nevertheless, the officers could, and did, reasonably believe the Buick keys belonged to Brown despite Brown's denials of ownership (Jones told the officers Brown sometimes drove a yellow Buick). Jones also told the officers Brown had left the apartment with the firearm. Brown denied knowledge of the gun's location when first asked.

Conversely, the court determined Brown was not credible. It noted the fluidity of Brown's statements throughout the investigation, his attempt to cover up evidence, and his criminal history – including a felony conviction for false impersonation. As a result, it found the officers' testimony established that Brown abandoned the keys and the Buick by denying ownership, thus foreclosing his Fourth Amendment claim.

The district court did not err. "A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated." *United States v. Rubio-Rivera*, 917 F.2d 1271, 1274 (10th Cir. 1990). "[A] district court may not suppress evidence unless the defendant has met his burden of proving that the challenged search or seizure

infringed on his personal fourth amendment interests." *Id.* We consider two factors in determining whether Brown met this test: "whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy, and whether the individual's subjective expectation of privacy is one that society is prepared to recognize as 'reasonable.'" *Id.* (quotations and citations omitted).

Ordinarily, "[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." *Id.* But where, as here, a defendant denies any association with a vehicle, he cannot then reasonably claim an expectation of privacy in relation to it. The expectation of privacy is abandoned when the object is abandoned. *See United States v. Burbage*, 365 F.3d 1174, 1178 (10th Cir. 2004) ("The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." (quotation omitted)). "Subjective intent aside, one who disclaims ownership is likely to be found to have abandoned ownership." *See United States v. Denny*, 441 F.3d 1220, 1227 (10th Cir. 2006).

Brown claims he did not abandon the keys because he intended to return for them later. The district court was not convinced and neither are we. Because Brown abandoned the keys, disavowed ownership of the car, and asserted no possessory rights to it, he suffered no Fourth Amendment violation. *See United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993) ("A warrantless search and

-8-

seizure of abandoned property is not unreasonable under the Fourth Amendment.").

B.  Admission of Evidence

Brown argues the district court erred in admitting evidence of gang activity and admitting the police report of Liedorff. "We review the district court's admission of evidence for an abuse of discretion." *United States v. Gwathney*, 465 F.3d 1133, 1140 (10th Cir. 2006).

1.  *Gang Affiliation*

Brown filed a liminal motion to prevent evidence of or reference to an investigation of gang activities claiming "its probative value [was] substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. He argues the prosecution's repeated use of the word "gang" was prejudicial error absent a strong and direct link between the crimes charged and the current activities of the Gangster Disciples.

"The decision whether to exclude evidence as unfairly prejudicial under Rule 403 is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." *United States v. Keys*, 899 F.2d 983, 987 (10th Cir. 1990) (quotation omitted). The district court concluded the evidence was more probative than prejudicial because drug distribution is a gang activity related to Brown's motive and intent to distribute the crack cocaine found in the vehicle.

During trial, the government called several officers to testify. As part of introductory testimony, the government's attorney asked all but one of the officers about their occupation. Five officers identified themselves as members of the Tulsa Police Department's Organized Gang Unit. Three of those officers testified that Brown admitted to being a member of the Gangster Disciples gang. Officer Gatwood told the jury the Gangster Disciples were an organized street gang based in the Saint Louis, Missouri area, Brown's former residence. He stated the Gangster Disciples are tied with narcotic sales and violent crimes. Gatwood testified members of the gang lived in Tulsa, Oklahoma, and Brown's tattoos represented words or symbols relating to the Gangster Disciples gang.

We have permitted the government to introduce evidence of gang activity in conspiracy cases. *See United States v. Brown*, 200 F.3d 700, 708 (10th Cir. 1999) (evidence of gang affiliation relevant to issues of identity, joint venture and existence of a conspiracy); *United States v. Sloan*, 65 F.3d 149, 151 (10th Cir. 1995) (evidence of gang activity more probative than prejudicial when used to prove the existence of a conspiracy); *United States v. Robinson*, 978 F.2d 1554, 1562 (10th Cir. 1992) ("associational evidence may be directly relevant on the issues of formation, agreement and purpose of a conspiracy"); *United States v. Silverstein*, 737 F.2d 864, 866 (10th Cir. 1984) (testimony regarding gang's symbols – including evidence of defendant's gang symbol tattoo – had probative value regarding defendant's alleged participation in and motive for murder).

Evidence of gang membership can be relevant to show "a common design or purpose in crimes committed by a group," such as conspiracy to possess with intent to distribute narcotics. John E. Theuman, Annotation, <u>Admissibility of Evidence of Accused's Membership in Gang</u>, 39 A.L.R. 4th 775 (1985); *e.g.*, *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (concluding that gang-related evidence was highly probative of government's contention that defendant was member of a gang and thus was a member of the charged drug conspiracy). The problem here, however, is that this is not a conspiracy case and the government has not cited a single case directly on point, *i.e.*, a case where the defendant was charged with a non-conspiracy drug crime and there were no factual issues to be determined by the jury regarding defendant's connections to alleged gang members. Moreover, independent research has failed to produce a substantially similar case in which evidence of gang membership was deemed admissible to establish intent.

Even assuming (charitably) the evidence was relevant, it is not necessarily admissible. Whether the probative value of this evidence *substantially* outweighed the danger of *unfair* prejudice is a more delicate question. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Rodriguez*, 192 F.3d 946, 951

-11-

(10th Cir. 1999) (quotations omitted). The admission of Brown's gang membership had the potential to elicit an unfavorable reaction from the jury increasing the danger of "guilt by association." *See United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005) (holding that evidence of gang membership is not admissible where it is meant merely to prejudice the defendant or prove his guilt by association with unsavory characters). We conclude the admission of the gang evidence in this instance was error. But that does not end the debate because of the harmless error doctrine.

Under the harmless error analysis, we must ask: "whether the evidence had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such an effect." *Gwathney*, 465 F.3d at 1140. Here, the evidence of Brown's gang affiliation could not have had a substantial influence on the jury's determination considering all of the evidence. Brown's intent to distribute drugs had clear evidentiary support. Beyond dispute he exercised dominion or control of the Buick containing the drugs. He possessed a digital scale of the type associated with sales of narcotics. He possessed a firearm, a drug dealer's "tool[]of the . . . trade." (R. Vol. V at 104.) Further, Brown admitted he had "work" (crack cocaine) in the car. The quantity of his "work" is typically associated with distribution rather than individual use. The overwhelming evidence established Brown possessed the cocaine base with intent to distribute. The evidence of his gang affiliation could not have had a substantial influence on the jury's verdict.

2. *Police Report*

Brown contends the district court erred in admitting Liedorff's police report as a prior consistent statement. He claims it bolstered the officer's credibility and shifted the entire focus of the trial to the report. We disagree.

During the government's case in chief, Liedorff recounted the statements Brown made to her at the police station. During cross examination, Brown's counsel established there was no video or audio recording of Brown's statements and Brown did not sign a written statement. Counsel then asked, "Other than what you said he said, there's nothing [except her testimony as to Brown's statements]; is that right?" (R. Vol. VI at 134.) Liedorff agreed. On redirect, the government introduced Liedorff's police report as a prior consistent statement. Brown objected because "there [had not] been a showing of an inconsistent statement." (*Id.* at 142.) The court overruled the objection, explaining the import of Brown's counsel's questions was "that [Liedorff] was making this up and [Brown's] statements were not, in fact, made." (*Id.*)

In *Tome v. United States*, the Supreme Court held Rule 801(d)(1)(B) of the Federal Rules of Evidence "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged

recent fabrication or improper influence or motive." 513 U.S. 150, 167 (1995).[2] This rule permits a properly admitted prior statement to be considered for the truth of the matter asserted and to rehabilitate a witness' credibility. *Albert*, 93 F.3d at 1483.

Brown asserts it was error to admit the police report to bolster Liedorff's testimony merely because she had been discredited on cross examination. In effect, Brown is arguing his questioning was not intended to imply recent fabrication. Rather, he wished only to highlight Liedorff's failure to record Brown's statements. Brown's questions to Liedorff were consistent with his cross examination challenging the procedure used by every officer who testified to Brown's statements. However, we need not resolve whether the admission of the report was proper because the district court's error, if any, was harmless. Contrary to Brown's assertion, the report's admission did not shift the entire emphasis of the trial to the police report. Liedorff had already testified Brown admitted he had "work" in the car and he knew of the amount of crack cocaine contained therein. As discussed earlier, the evidence of Brown's guilt was

---

[2] "Under the 'pre-motive' requirement, a prior consistent statement is not admissible unless the prior statement was made before the motive to fabricate arose." *United States v. Albert*, 93 F.3d 1469, 1482 (10th Cir. 1996). While we recognize that perhaps Liedorff's motive to fabricate Brown's statements could have existed at the time the police report was written, Brown did not raise this issue to the trial court or on appeal. Therefore, it is waived. *See Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995) (a failure to draw attention to an error below will ordinarily result in waiver).

overwhelming. The police report was merely cumulative and its admission, even if error, was not reversible error. *See, e.g., United States v. Ramos-Caracalla*, 375 F.3d 797, 804 (8th Cir. 2004) ("Where the evidence is at most an extra helping of what the jury had heard before, the evidence is merely cumulative and its admission does not result in reversible error." (quotation and citation omitted)).

C. Obstruction of Justice

Brown contends the district court erred in applying a two-level obstruction of justice adjustment to both his counts at sentencing. *See* USSG §3C1.1. We review the district court's factual findings supporting the application of a particular guidelines provision for clear error and its legal conclusions *de novo*. *United States v. Chavez*, 229 F.3d 946, 954 (10th Cir. 2000).

Section 3C1.1 mandates a two-level offense increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." USSG §3C1.1 Obstruction of justice can include perjury, the destruction or concealment of material evidence, or providing a materially false statement to law enforcement impeding "the official investigation or prosecution of the instant offense . . . ." USSG §3C1.1, comment. (n.4(b), (d) & (g)). The district court determined Brown obstructed justice in every possible way during the course of the investigation and

-15-

trial. He destroyed evidence by flushing the bullet down the toilet. During the investigation, he lied to police officers about the location of the gun and his ownership of the car keys. During the suppression motion hearing and at trial, Brown committed perjury when he testified he did not have knowledge of the cocaine and did not consent to the officer's entry into the Buick to retrieve the gun.

Brown argues "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." *Chavez*, 229 F.3d at 955. Perjury requires finding the defendant willfully and intentionally gave false testimony under oath concerning a material matter. *See United States v. Cocus*, 110 F.3d 1529, 1536 (10th Cir. 1997) (quotation omitted). A court must ensure the false testimony is not a result of confusion, mistake or faulty memory. *Id.* In addition, the perjured statement must be so significant "that, if believed, [it] would tend to influence or affect the issue under determination." USSG §3C1.1, comment. (n.6).

While this is an accurate statement of the law, the record reveals much more than merely "problems in a credibility contest." (Appellant's Br. at 43.) The only consistency in Brown's story was inconsistency. Ample evidence exists demonstrating Brown deliberately attempted to obstruct or impede the administration of justice. The district court did not err by imposing the two-level enhancement to Brown's cocaine conviction.

D.  Cumulative Error

In his final issue on appeal, Brown's entire argument is contained in a single sentence: "Taken as a whole, the errors should warrant reversal even if one does not individually."  (Appellant's Br. at 45.)  Our response will be equally succinct.  Even were we to assume there was more than one error in this case, any such errors were cumulatively harmless and did not substantially influence the trial.

Affirmed.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge
