# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2869

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Green, also known as Chuck, also known as Stunna

*Defendant - Appellant*

_____

No. 22-2919

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony A. Abari, also known as Anthony Akeum Abari, also known as B or Bee

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: May 9, 2023
Filed: October 5, 2023
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

A jury convicted Kevin Green and Anthony Abari of conspiracy to distribute 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, as well as individual counts of possession with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl. Abari was convicted of being a felon in possession of a firearm. Green and Abari appeal, arguing that the district court[1] erred in denying their request for a jury instruction on multiple conspiracies. Abari contends that the district court erred by ordering him to be handcuffed and shackled throughout trial and by admitting into evidence portions of a post-arrest interview. Green argues that the evidence was insufficient to support his possession with intent to distribute conviction. We affirm.

## I. Background

A woman died of a drug overdose in December 2018 after consuming cocaine laced with fentanyl. Law enforcement officers traced her fatal dose to a dealer named Relondo Hall and to an apartment in Southeast Minneapolis, Minnesota, which Hall had rented with Abari, his friend of more than twenty years.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Officers executed a search warrant at the apartment in January 2019. When they entered the apartment, Abari was on the couch, talking on his cell phone. Hall's daughter was in the bedroom, and her boyfriend was in the hallway outside the apartment.

Abari complied with the officers' commands to lie down on the floor. After handcuffing him, officers rolled Abari onto his side, finding a 9 mm SCCY model CPX-1 handgun and his cell phone beneath him, along with more than $4,000 on his person.

The search revealed significant evidence of drug trafficking, as well as evidence linking Hall and Abari to the apartment. Approximately 100 grams of heroin mixed with fentanyl lay on the kitchen counter, some packaged in small bindles and scattered around a digital scale. A drug-cutting agent was found in a nearby cupboard. Officers also found documentation in Hall's name, several letters addressed to Abari, medication prescribed to Abari, and Abari's-size clothing and shoes. Another firearm was found in the bedroom closet. Upon learning of the search, Hall sent the following text message to Green: "They hit the spot change number ASAP."

During a recorded post-arrest interview, Abari denied any involvement with the drugs or the firearms, but admitted that he had stayed at the apartment and often visited it. Upon being released from custody a few days after the search, Abari activated a new phone and immediately resumed drug trafficking. He sent drug-procuring text messages to Green, as well as messages to Hall, saying that he had customers waiting and was "trying to get a whole one."

Abari was pulled over at a gas station in February 2019. During a search of his vehicle, officers found a digital scale and a handgun behind the glove compartment, as well as one gram of fentanyl in the headliner. Officers seized Abari's new cell

phone, which stored three phone numbers for Green and evidence of numerous calls and text messages between the two, the latter of which indicated that Green supplied heroin to Abari.

Abari and Hall ceased dealing with Green in March 2019. Hall was not satisfied with his share of the proceeds, and there were rumors that Green had been stealing Abari's customers. At their final meeting in mid-March, Abari and Hall gave Green a firearm in exchange for cash and heroin laced with fentanyl.

A confidential informant reported in April 2019 that he had seen Abari with a handgun and a large amount of heroin in a South Minneapolis home. Officers thereafter executed a search warrant at the informant-provided address. They found Abari in the basement and Hall in the kitchen, as well as nine other persons throughout the house. Officers found approximately twenty-one grams of heroin laced with fentanyl in the basement, smaller quantities in the living room, and a handgun on the kitchen floor. Abari was arrested and has thereafter been in custody.

Law enforcement officers began investigating Green in January 2019. In mid-February, they observed him driving a rose-colored Porsche SUV registered to his girlfriend, Minnie Loyd, who lived in Burnsville, Minnesota. Green made three stops, during which he briefly met with people before driving away. Officers observed Green leave Loyd's home in different high-profile vehicles in April and June 2019. In late June, officers followed Green after he left the home and drove to a location near Lake Nokomis, where he parked. Individuals entered the vehicle, stayed for a moment, and then exited. Officers recognized one of the individuals as a heroin user who was one of Hall's and Abari's customers.

Officers obtained a warrant to search Loyd's Burnsville residence in early July 2019. After Green left the residence in a Bentley automobile, officers detained him while the search was being executed and found more than $4,000 on his person. The

-4-

search of Loyd's home revealed approximately 298 grams of heroin mixed with fentanyl in the kitchen; $190,302 in a safe in the primary bedroom's closet; and a money counter in the primary bedroom's bathroom. Officers also found evidence linking Green to the residence, including a debit card in his name, a photo of him with Loyd, legal paperwork, and a large collection of men's athletic shoes.

Abari, Hall, and Green were charged in a second superseding indictment, the conspiracy count of which alleged that from December 2018 to July 2019 the men conspired with each other and others to distribute 400 grams or more of mixtures and substances containing fentanyl. Abari was charged with two counts of possession with intent to distribute—one related to the drugs seized during the January 2019 search and the other related to those seized during the April 2019 search. He was also charged with being a felon in possession of a firearm related to the January 2019-seized handgun. Green was charged with one count of possession with intent to distribute related to the drugs seized during the July 2019 search of Loyd's residence. Hall pleaded guilty to the conspiracy count and agreed to testified at trial.

Before trial began, the government indicated that it intended to introduce parts of Abari's thirty-six-minute January 2019 post-arrest interview. Specifically, the government would introduce brief passages in which Abari linked himself to the cell phone, handgun, Hall, and the apartment. Abari moved in limine to have the entire interview admitted or to have certain exculpatory statements admitted. The court denied both motions, "find[ing] such portions [were] not necessary to explain those portions that [would] be introduced by the government." D. Ct. Order of Jan. 6, 2022, at 2.

The district court ordered that Abari be fully restrained throughout trial. Its decision was "[b]ased on the record in this case, which involves previous disruptions by Abari in the courtroom, threats against witnesses, the prosecution, law enforcement and this Court, his conduct in jail and during transports and his threats

-5-

to grab a gun from a deputy marshal escorting him into the courtroom and 'shoot it out' so that he is killed." D. Ct. Order of Dec. 29, 2021, at 6. The court ordered that black table skirts be placed around both parties' tables and that the U.S. Marshals take steps to ensure that the restraints made as little noise as possible. Throughout trial, the parties were seated before the jury entered and remained seated until the jury left the courtroom.

Over the course of the ten-day trial, the government called numerous law enforcement officers, forensic experts, and lay witnesses, including Hall and a drug user who had purchased heroin from Hall and Abari. The officers testified regarding their investigation into the conspiracy, the searches and seizures, and the evidence of drug trafficking. The government presented evidence found during the execution of the search warrants in January, April, and July 2019, as well as photos and body-cam footage. Portions of the recording of Abari's post-arrest interview were also admitted.

Hall testified that he and Abari distributed heroin that Green supplied to them. According to Hall, Green supplied Abari heroin in "40, 50, 100 grams, a couple hundred grams, at different times different grams." Green supplied less to Hall, who "start[ed] off with three grams then 10, 20, 30, 40 . . . . It went up to the more I sold, the more I was able to get fronted." He testified that both he and Abari had stopped dealing with Green by March 2019, when they found other sources, including a supplier named Moe. Hall testified that the drugs found during the April 2019 raid came from Moe and that Green had "[n]othing at all" to do with the drugs. Although the drug user testified that he had not bought directly from Green, an officer testified that he witnessed a transaction between the two in June 2019.

At the close of evidence, Green and Abari moved for judgment of acquittal, arguing, with respect to the conspiracy count, that any conspiracy between Green,

Hall, and Abari ended in March 2019, when they stopped working together. The district court denied their motions.

The government argued in closing that the jury should find that the conspiracy involved 400 grams or more of a mixture and substance containing fentanyl, explaining that 418 grams were seized during the conspiracy and that the cash seizures and witness testimony indicated even greater amounts of the drug. Defense counsel argued that the government had failed to prove the conspiracy charged in the indictment, claiming that the seizures from January, April, and July 2019 were unrelated and, at most, established multiple conspiracies with uncharged co-conspirators.

The district court denied Green and Abari's request for a jury instruction on multiple conspiracies. Specifically, they had asked the court to charge the jury with deciding "whether there were really two (or more) separate conspiracies to distribute heroin."[2] In opposing the defendants' request, the government conceded that the

---

[2]Their proposed instruction read, in part:

> The government must convince you beyond a reasonable doubt that each defendant was a member of the conspiracy to commit the crime, as charged in the indictment. If the government fails to prove this as to a defendant, then you must find that defendant not guilty of the conspiracy charged, even if you find that he was a member of some other conspiracy. Proof that a defendant was a member of some other conspiracy is not enough to convict.

> But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved that he was a member of the single conspiracy to commit the crime of distributing heroin with the other defendant as charged in the indictment.

defendants were entitled to argue multiple conspiracies in their closing arguments, but maintained that "[t]he 8th Circuit has specifically ruled that there is no error where a district court declines to give a multiple-conspiracy instruction on facts similar to those here."

The district court's instructions on the elements of conspiracy were tailored to the conspiracy alleged in the indictment. The instructions further provided that if the jury "determine[d] that the conspiracy involved fentanyl," then it was required to "determine unanimously and beyond a reasonable doubt the quantity of any mixture or substance containing fentanyl that was involved in the conspiracy."

During deliberations, the jury submitted the following question to the district court: "For the conspiracy: Are you guilty of things that happen after leaving the conspiracy." Green and Abari renewed their request for a multiple-conspiracies instruction, which the court denied. The court instead instructed that "[a] defendant is liable for the reasonably foreseeable actions taken by coconspirators in furtherance of the conspiracy unless he affirmatively withdraws from the conspiracy." The court additionally explained that it was the defendant's burden to establish withdrawal, that is, "that he took affirmative action by making a clean break to the authorities or by communicating his withdrawal in a manner reasonably calculated to reach his coconspirators."

The jury returned guilty verdicts on all counts but the count charging Abari with possessing the drugs found during the April 2019 raid. The jury found that the conspiracy involved 400 grams or more of a mixture or substance containing fentanyl, which triggered a mandatory minimum sentence of 180 months' imprisonment for Green based on his prior serious drug felony. See 21 U.S.C. § 841(b)(1)(A)(vi). The district court sentenced Green to 180 months' imprisonment and sentenced Abari to 240 months' imprisonment.

## II.  Discussion

### A.  Multiple-Conspiracies Instruction

Green and Abari argue that the district court erred in denying their requests for a jury instruction on multiple conspiracies.  "Generally, a defendant is entitled to a jury instruction that explains his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." United States v. Armstrong, 60 F.4th 1151, 1164 (8th Cir. 2023) (internal quotation marks and citation omitted), *petition for cert. filed* (U.S. July 13, 2023) (No. 23-5078).  In conspiracy cases, a multiple-conspiracies instruction must be given "[w]here the evidence can support a finding of multiple conspiracies." United States v. Nevils, 897 F.2d 300, 306 (8th Cir. 1990).  The instruction should not be given, however, where "the evidence substantially points to a single conspiracy." United States v. Davis, 882 F.2d 1334, 1341–42 (8th Cir. 1989) (quoting the Model Criminal Jury Instructions for the Eighth Circuit)); see also United States v. Burris, 22 F.4th 781, 786 (8th Cir. 2022).  The government does not contest the timeliness of defendants' request or that the proposed instruction accurately stated the law.  "The only issue, then, is whether a multiple-conspiracies instruction was adequately supported by the evidence." Armstrong, 60 F.4th at 1164.

Because the evidence would have supported a finding that more than one conspiracy existed, the jury should have been instructed on multiple conspiracies.  It reasonably could have found that the conspiracy among Green, Abari, and Hall ended in March 2019; that Abari and Hall thereafter found other suppliers, who were not connected to Green; and that any later drug-trafficking activity by Green was not in furtherance of any conspiracy among the three.  The jury thus could have found that there were two—or perhaps even three—conspiracies.

The question remains whether the lack of such an instruction requires the reversal of Green's and Abari's conspiracy convictions. "If the evidence supports a finding of multiple conspiracies, we will reverse a conviction for failure to give a multiple conspiracy instruction only when the failure to give the instruction causes substantial prejudice to the defendant." United States v. Haslip, 416 F.3d 733, 736 (8th Cir. 2005). We have said that "[i]f the evidence supports a single conspiracy, the failure to give a multiple conspiracies instruction is not reversible error." United States v. Sesay, 937 F.3d 1146, 1151 (8th Cir. 2019) (quoting United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998)). Likewise here, the lack of any substantial prejudice stemming from the absence of a multiple-conspiracies instruction and the presence of sufficient single-conspiracy supporting evidence leads us to conclude that no reversible error occurred with respect to the drug quantity finding.[3]

### B. Shackling and Handcuffing of Abari

Abari argues that his Fifth Amendment right to due process was violated when the district court ordered that he be shackled and handcuffed throughout trial. The Constitution permits the shackling of "a criminal defendant only in the presence of a special need," including courtroom security. Deck v. Missouri, 544 U.S. 622, 626 (2005). The district court must balance the special need against the possibility of prejudice to the defendant. United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006). We review for abuse of discretion a district court's decision to order the use of restraints on a defendant based on its concern for courtroom security. Id.

We conclude that the district court did not abuse its discretion by ordering that Abari be shackled and handcuffed. Abari was disruptive during pretrial hearings. He had a commanding stature at six feet, two inches in height and three hundred fifty

---

[3]To the extent that it has been raised, we reject the argument that the district court's response to the jury's question was erroneous.

pounds in weight. While in custody, he told his sister over the phone that "he would make those people kill me" before being sent to prison for life, explaining that "he would take one of those people's pistols off their hip and shoot it out in the courtroom." A fellow prisoner reported that Abari had bragged about his gang affiliation and about being able to gather private information regarding the prosecution team, law enforcement officers, and the district judge, including their addresses and the types of vehicles they drove. Based on these incidents, specific reports, and threats, as well as Abari's noncompliant behavior in jail and during transport, the district court acted well within its discretion by ordering that Abari be shackled and handcuffed during trial and by taking appropriate precautions to minimize any prejudice to Abari.

## C. Admission of Part of Abari's Post-Arrest Interview

Abari argues that the district court abused its discretion by admitting only portions of his January 2019 post-arrest interview rather than granting his motion to require the introduction of the full recording. See United States v. Ali, 47 F.4th 691, 698 (8th Cir. 2022) (standard of review). He contends that the jury should have heard his repeated denials that he owned the drugs or handgun. Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." This "rule of completeness" is designed "to avoid misleading impressions created by taking matters out of context." United States v. Ramos-Caraballo, 375 F.3d 797, 802 (8th Cir. 2004). The party urging admission must thus specify any portion of the writing or recording that is relevant and "that qualifies or explains portions already admitted." Id. at 803 (citation omitted). Rule 106 "does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception," however. Id. (citation omitted).

-11-

The portions admitted into evidence included Abari's statements that he was talking with his mother on the phone when officers arrived; that a friend had given him cash so that he could pay for car repairs; that he had recently spent a couple of nights on the couch at the apartment but had otherwise had been staying at a hotel; that he visited the apartment regularly; that he had been friends with Hall for more than twenty years; and that Hall sometimes stayed at the apartment. These statements connected Abari to the cell phone found beneath him, to the apartment in which the drugs were found, and to Hall, his alleged co-conspirator. Abari did not confess, however, nor are these statements misleading or necessarily requiring context. We thus conclude that the district court did not abuse its discretion by not requiring introduction of the full recording or the parts in which Abari denied that he brought the drugs to the apartment or that he possessed the drugs found therein.

The government concedes that the portion in which Abari admitted that he knew that the handgun had "been in that house for quite some time" was relevant to Abari's knowing possession of the 9 mm SCCY model CPX-1 handgun, an element of his felon-in-possession offense. Even assuming that a hearsay exception applied and that the portions in which Abari denied owning or possessing the handgun should have been admitted, any error was harmless because a similar denial was included in a portion played for the jury and because the evidence that Abari knowingly possessed the handgun was overwhelming. The jury saw the officer's bodycam recording of Abari's arrest, when the handgun was found beneath Abari, near the couch that he had slept on the previous nights. They heard expert testimony that Abari's DNA was found within the handgun's magazine, as well as eye-witness testimony that Abari carried firearms, including the handgun that Abari was charged with possessing. On this record, we cannot say that any evidentiary error had a substantial influence on the jury's verdict.

### D. Green's Conviction for Possession with Intent To Distribute

Green challenges the denial of his motion for judgment of acquittal on the individual conviction for possessing with intent to distribute 40 grams or more of a mixture and substance containing fentanyl. He argues that the government failed to prove that he actually or constructively possessed the controlled substances found in Loyd's home. "In reviewing a preserved challenge to the sufficiency of evidence, we consider the evidence in the light most favorable to the verdict, and assess whether any rational jury could have found the elements of the offense beyond a reasonable doubt." United States v. Two Hearts, 32 F.4th 659, 662 (8th Cir. 2022).

We conclude that a rational jury could have found that Green constructively possessed the 298 grams of heroin laced with fentanyl. The government presented extensive evidence of Green's drug dealing: that he had provided hundreds of grams of heroin to Abari and Hall in the months before the search, that he carried multiple cell phones and used different rental cars, that he had left Loyd's home and thereafter made brief stops indicative of drug dealing, and that he posted photos on social media showing him with large amounts of cash, despite having no legitimate source of income. The government also presented evidence that Loyd was Green's longtime girlfriend and that he stayed at her home, parked and drove cars to and from her residence, stored his extensive sneaker collection there, and posted photos with Loyd in the primary bedroom and kitchen. Green's mother posted a photo on social media, in which she referred to Loyd as her "daughter." Officers testified that Green was arrested after he left Loyd's home so that he could be detained during the search, which revealed the 298 grams of heroin laced with fentanyl. Moreover, according to cell tower records, Green's cell phones most often utilized the tower nearest to Loyd's home—both during the months leading up to the seizure, as well as the twelve hours immediately before the search warrant was executed. Green said in a custodial interview that Loyd had nothing to do with the drugs. We thus conclude that the evidence was sufficient to support a finding that Green constructively possessed the

drugs found in Loyd's home.  See United States v. Thompson, 686 F.3d 575, 584 (8th Cir. 2012) (evidence sufficient to show that defendant constructively possessed drugs found in girlfriend's apartment when girlfriend testified that defendant stayed there frequently, that she sometimes gave him a key, and that the drugs found therein were not hers).

## III.  Conclusion

The judgments are affirmed.

_____